Wilmer Glauner Hinrichs, New Orleans, for plaintiff-appellant-relator.

Dillon & Williams, Gerard M. Dillon, New Orleans, for defendant-appellee-respondent.

TATE, Justice.

This suit was instituted by Mrs. Patricia Lee Sherwood Snell for the death of her father, Dr. William G. Sherwood. This suit was consolidated with Mrs. Patricia Lee Sherwood Snell v. Mrs. Mercedes Stein, 261 La. 358, 259 So.2d 876, (Docket No. 51,313; decided this date), a suit for the wrongful death of her husband arising out of the same accident. The issues presented herein are identical with those considered by us in that case.

Accordingly, for the reasons assigned in the companion appeal, the summary judgment dismissing plaintiff's suit is reversed, and the case is remanded to the district court for further proceedings not inconsistent herewith. All costs of these proceedings in the appellate courts are taxed against the Firemen's Fund Insurance Company, defendant-appellee; all other costs to be determined upon final disposition of this cause.

Reversed and remanded.

259 So.2d 882

J. H. JENKINS CONTRACTORS, INC.

v.

Joseph J. FARRIEL and Mary Victoria Farriel.

No. 51442.

March 27, 1972.

Patsy Jo McDowell, Baton Rouge, for plaintiff-appellant-applicant.

Durrett, Hardin, Hunter, Dameron & Fritchie, Roger M. Fritchie, Baton Rouge, for defendants-appellees-respondents.

HAMLIN, Justice:

In this petitory action, we directed Certiorari to the Court of Appeal, First Cir-

cuit, for review of its judgment which affirmed in part and reversed in part the judgment of the trial court, both judgments to be discussed infra. Art. VII, Sec. 11, La.Const. of 1921; 246 So.2d 340; 258 La. 906, 248 So.2d 333.

J. H. Jenkins Contractors, Inc., a domestic corporation domiciled in the Parish of East Baton Rouge, instituted the present proceeding October 3, 1969, in which it prayed to be recognized as the owner of certain described property. Plaintiff's petition recites:

"1.

"Plaintiff is the true and lawful owner of the following described immovable property:

"That certain tract of land containing fifteen acres, more or less, in the Southwest Quarter of the Northeast Quarter of Section 6, Township 9 South, Range 6 East, in Livingston Parish, Louisiana; bounded, now or formerly, on the North by gravel highway; West by John Hernandez; South by J. H. Sharp; and East by Joseph J. Farriel and Mary Victoria Farriel.

"2.

"Plaintiff purchased the interests of the heirs of Simpson H. Sharp, the common ancestor in title of itself and defendants, in the following manner:

"1. By Cash Sale from Delmas D. Sharp, Jr., Victoria Ann Sharp Hardy, and Mary Elizabeth Sharp Orr, dated December 22, 1967, * * *

"2. By Cash Sale from Claiborne Walter Sharp, Jr., dated July 2, 1969, * * *

"3. By Cash Sale from Mrs. Melanie Ledet Sharp, Wiley H. Sharp, Jr., Paul F. Sharp, Thomas S. Sharp, Michael Raymond Sharp, Beverly Sharp Burgess, and Melanie Sharp Lanaux, dated June 27, 1969, * * *

"4. By Cash Sale from Mrs. Nannie Julia Sharp Labbie, dated July 2, 1969, * * *

"5. By Cash Sale from Wyatt Earl Sharp and Ellen Anita Sharp, dated July 3, 1969, * * *

"3.

"The property at issue was part of a larger tract acquired by Simpson H. Sharp from Jay B. Davison on April 16, 1924, * * * was sold by Simpson H. Sharp to C. W. Sharp on February 18, 1938, * * * and was repurchased by Simpson H. Sharp from Claiborne Walter Sharp on April 15, 1939, * * * The heirs of Simpson H. Sharp, plaintiff's vendors, acquired their interests in the Judgment of Possession in the Succession of Simpson H. Sharp, * * * and in the Judgment of Possession in the Succession of Nannie Kate Carter Sharp, * * *

"4.

"Defendants herein purchased from the common ancestor in title of both plaintiff and defendants, Simpson H. Sharp, the following described land, by acts recorded in COB 61, Folio 187, Entry Number 2481 and COB 66, Folio 526, Entry Number 8227:

"Five (5) acres of land in Section 6 T 9 SR 6 E. Bounded North by Farriel Road; South by James Sharp land; East by Bill Brown; West by Simpson H. Sharp, together with all buildings and improvements thereon.[1]

"5.

"The five acres conveyed to defendants was originally part of the tract of land of which plaintiff herein owns the fifteen acre residue, more or less, the possession of which is at issue in this lawsuit.

"6.

"The heirs of Simpson H. Sharp, plaintiff's vendors, cut and removed timber from the fifteen acre tract presently owned by plaintiff during the year 1965, and were paid for same.

"7.

"Defendants claim possession of the fifteen acre tract without any title whatsoever thereto and without any right to possession of the said tract, and the said defendants refuse to deliver possession of said property to plaintiff without any good or legal reason for such refusal.

"WHEREFORE, PLAINTIFF PRAYS that after due proceedings had, that there be judgment in favor of J. H. Jenkins Contractors, Inc., and against Joseph J. Farriel and Mary Victoria Farriel, jointly and in solido, recognizing plaintiff as the true and lawful owner of the above described property, and as such entitled to the full and undisturbed possession thereof, and ordering said defendants to deliver possession of said property to plaintiff, and for all costs of these proceedings.

1. The act of sale, P–11, was a private act executed on August 18, 1944 for a consideration of $125.00, one-half of the mineral rights being reserved by vendor, Simpson H. Sharp. The act recited that the vendees were Joseph J. Farriel and his wife, Mary V. Farriel; it was witnessed by two parties and signed by the vendor, Mary V. Farriel, and Joseph J. Larrue. The act was not acknowledged, but on May 19, 1948, a correction deed by notarial affidavit was executed by Nannie K. Sharp, P–12, in which she stated: "(2) That in said deed the above described land was erroneously described as being in Section 6 T 9 SR 5 E., when in truth and in fact, the description shown above in paragraph one correctly places said land in Section 6 T 9 SR 6 E." The affidavit recited that Nannie K. Sharp was acting as the duly authorized agent and attorney of Simpson H. Sharp; it was witnessed by two parties and signed by the Notary and Nannie K. Sharp.

"II. For all general and equitable relief."

(We have quoted plaintiff's petition in full because of contentions advanced by defendants, infra, with respect to some of the petition's allegations.)

In answer, defendants averred in Article 4 thereof that the allegations of Article 4 of plaintiff's petition were admitted as being generally correct. They averred in Article 5 of their answer that the five acres referred to does adjoin the fifteen acre tract in question in this suit. Article 7 and the prayer of defendants' answer recite:

"7.

"The allegations of Article 7 of plaintiff's petition are denied except that it is admitted that defendants claim possession and title to the fifteen acre tract in question. Defendants show that they have possessed said fifteen acre tract, as owner, openly, notoriously and continuously for a period of more than thirty-two years from this date and have had said property fenced at times and used it for pasturing cattle; have cut and sold timber from same; and have erected and maintained their residence on said property, which residence is still on said property and is still occupied by respondents.

"WHEREFORE, respondents pray that after due proceedings have been had herein there be judgment rendered here-

in in favor of respondents, Joseph J. Farriel and Mary Victoria Farriel, and against plaintiff J. H. Jenkins Contractors, Inc., rejecting the demands of plaintiff at its costs and decreeing the property that is the subject of this litigation to be the property of respondents."

The facts of record disclose that the acreage in controversy was formerly owned by Simpson H. Sharp, Sr., and his wife, Nannie Kate Carter Sharp, now deceased, and was part of the Sharps' extensive land holdings. Plaintiff's deeds, five in number, enumerated in its petition supra, all recite that it was purchasing all of the right, title, and interest in and to all immovable property formerly owned by Simpson H. Sharp, Sr. and Mrs. Nannie Kate Carter Sharp in Livingston Parish, Louisiana. Plaintiff's petition, supra, was based on title and was heard in the trial court on its allegations. Lengthy testimony was adduced at trial; it pertained in great part to the possession of the defendants of the controversial acreage and the respective titles of both plaintiff and defendants. At the trial's conclusion, the trial court stated:

"The Court will render judgment recognizing the defendant to be the owner by purchase of the easterly five acres of the property in dispute and the westerly five acres by acquisitive prescription of 30 years of the whole 20 acre tract. The plaintiff will be recognized as the owner

of the intervening ten acres of land between the two five acre tracts, which have been decreed to be the property of the defendant. The Court will recognize the property in between the two five acres to be recognized as being owned by the plaintiff, J. H. Jenkins Contractors, Incorporated. * * *"2

The above drawing was a part of the appellate record; it reflects in substance the land adjudicated and in controversy.

[725Z]

The trial court rendered judgment in accordance with its statement supra; it recognized defendants to be the owners by purchase and title of the easterly five acres adjoining the ten acres which it adjudicated to plaintiff; it recognized Joseph J. Farriel to be the owner by the acquisitive prescription of thirty years of the westerly five acres adjoining the adjudicated ten acres.

Plaintiff appealed to the Court of Appeal and alleged that the trial judge was in legal error in ruling that the defendants were owners by purchase of the *easterly* five acres of the property in dispute.

Defendants answered the appeal, claiming ownership of the entire twenty acre parcel and alternatively contending that plaintiff's claim as to the center ten acres should be rejected because of plaintiff's alleged failure to establish title thereto.

The Court of Appeal found that plaintiff failed to establish its title to the middle ten acres; it stated:

"We are of the view that to admit parol evidence in aid of plaintiff's deed would in effect, rest plaintiff's title on parol rather than writing. The deeds in question do not contain a defective or erroneous description—they contain no description at all. Assuming the partition suits referred to in the deeds in question were admissible in aid of plaintiff's cause, it would avail plaintiff nothing because said instruments are not of record herein. The judgments of possession relied upon by plaintiff do not describe either a 15 or 20 acre tract situated in the SW¼ of the NE¼ of Section 6, T. 9 S., R. 6 E. We find, therefore, that plaintiff has failed to establish color of title to the middle ten acres of subject tract and dismiss plaintiff's action *as of nonsuit*." 246 So.2d at p. 345.[3] (Emphasis ours)

The Court of Appeal found that defendants did not prove their claim of ownership to the *middle* ten acres of the subject land by virtue of thirty years adverse possession. It stated: "* * * Neither do we find that defendants have possessed the middle 10 acres in such manner as to give open public notice and fixing with certainty the limits of the property intended to be possessed. As to actual enclosures, it is shown that defendants did not fence the property until one year prior to plaintiff filing suit." The Court further

---

3. The decree of the Court of Appeal ordered in part: "It is further ordered, adjudged and decreed that the judgment of the trial court recognizing plaintiff, J. H. Jenkins Contractors, Inc. as owner of the remaining 10 acres of the property in dispute herein, is reversed and set aside, and plaintiff's demand as to said ten acres of land dismissed *as of nonsuit*; all costs of these proceedings to be paid by plaintiff, J. H. Jenkins Contractors, Inc." (Emphasis ours)

stated: "Defendants' use of this portion of the tract has been minimal and sporadic. Moreover, it has not been either exclusive or uninterrupted inasmuch as the Sharps have, within the last thirty years exercised acts of ownership over the center 10 acres by conducting timber operations thereon at least twice." The Court of Appeal dismissed the defendants' claim to the *center* ten acres *with prejudice*.

The Court of Appeal affirmed the judgment of the trial court, supra, with respect to the *eastern* and *western* tracts. It stated:

"Plaintiff's petition alleges defendants' ownership of the *eastern* five acre portion of subject property, which allegation is admitted in defendants' answer. Notwithstanding this procedural aspect of the case, appellant's brief is devoted in large measure to an attack on defendants' unacknowledged deed to the eastern five acre plot. Also significant is the fact that in appellant's brief and oral argument before this court, it is *expressly conceded that defendants have acquired title to the western five acre plot by thirty years adverse possession.* In this connection, we note that the record conclusively establishes that defendant, Joseph J. Farriel, and his parents before him, have had continuous, open, peaceable, public and uninterrupted possession as owners of the *western* five acres of subject tract at least from 1935,

when defendant's father built a home thereon, until October, 1969, when this action was instituted, a period in excess of thirty years. Defendant maintains that his father purchased the *western* five acres from Sharp; that defendant saw the deed which was never recorded, and that the deed was lost in a fire which destroyed the family home in 1955. It is undisputed that the residence was immediately rebuilt on the same site, that is on the *western* five acres of the property in contention.

"Considering plaintiff's admission of defendants' ownership of the *eastern* and *western* five acres involved, together with defendants' deed to the *eastern* 5 acres and established prescriptive title to the *western* 5 acres, we deem defendant, Joseph J. Farriel, owner of the *western* five acres of the property involved and defendants, Joseph J. Farriel and Mary Victoria Farriel, owners of the *eastern* five acres acquired by purchase from Simpson H. Sharp, Sr." 246 So.2d at 342. (Emphasis ours)

Certiorari was applied for by plaintiff and granted. Herein the following three errors are assigned to the opinion and decree of the Court of Appeal:

"1. The First Circuit Court of Appeal is in legal error in holding that Joseph J. Farriel and Mary Victoria Farriel are the lawful owners of the eastern

five acres involved in this law suit * * *

"2. The First Circuit Court of Appeal is in legal error in holding that plaintiff admitted defendants' ownership of the eastern five acres above described.

"3. The First Circuit Court of Appeal is in legal error in finding that the western five acre tract which the defendants incidently have acquired by virtue of prescription was not the same five acre tract which was meant to be conveyed by Simpson H. Sharp in COB 61, Folio 187, Entry Number 2481, and COB 66, Folio 526, Entry Number 8227."

The testimony of Joseph J. Farriel is to the effect that during the Second World War he entered the Service on December 12, 1942 and was released November 22, 1945; he was twenty-one years of age when he entered the Service and forty-eight years at the time of trial. When questioned as to whether he attempted to buy five acres of land located near where he was living at the time of trial, Farriel responded, "I bought five acres in 1944 joining Mr. Willie Brown at that time, was paid for then, in '44, my wife paid for it then. She purchased it. I wrote her and she went and bought it." He said that the purchase was from Simpson H. Sharp, Sr. At this time, counsel for the Farriels made the following objection: "Your Honor, we object to any testimony along these lines on the grounds that the plaintiffs have alleged in Article 4 of their petition this had been purchased property which is described in the petition from Simpson H. Sharp and we have admitted that. That is the five acres so any further evidence is irrelevant and immaterial. It is alleged and admitted." The trial court responded, "I see no point in pursuing that because it is already a matter of record." (The preceding took place at the beginning of trial when Farriel was called for cross examination.)[4]

Appearing as a witness in chief for the defendants, Farriel testified that the 1944

---

4. While Wiley Sharp, Jr. was testifying, he was asked when he became aware that an incorrect description had been given and had been made on the deed from Mr. Sharp to Mr. Farriel. Counsel for the Farriels made the following objection: "Your Honor, we object to that on several grounds, among which it is leading. Secondly, and even more important, she is now contradicting the allegations of her own petition. There is nothing in here about incorrect description. They have alleged they sold us the easterly five acres, we have admitted that is correct insofar as this Mr. Farriel is concerned. What is at issue here is not an incorrect description but whether or not this Mr. Farriel and his father and mother before him have or have not acquired the title to the westerly five acres by prescription of either ten or thirty years. There is no allegation nor contention in this lawsuit about any erroneous description. This is not a suit to reform a deed." Counsel for plaintiff replied, "Whether it was correct or incorrect would be for Mr. Sharp to say, I think, Your Honor." The Court ruled, "Oh, no. The objection

sale of the eastern five acres to him and his wife was executed while he was in South America. He stated, " * * * I bought that so my wife and I would have a home, when I came out of service. And then after I came home, my father was sick, he had to be under doctor's care constantly and he said to me, son, would you stay here and take care of me and mama until we both pass away and I said, dad, that is a promise and I did just what I promised." Farriel emphatically stated that when he bought in 1944, he did not think that the property he purchased was the property on which his father was living at the time. Farriel continued living on the western five acres, but he had purchased the eastern five acres. With respect to taxes, Farriel said: "Well, it is all bounded by the five acres that I bought. That is all in one square and it is all exempted been being exempted." The 1944 sale of the eastern five acres to the Farriels was recorded on September 12, 1944; the act, which we consider an act under private signature, was never acknowledged, but its execution became a matter of public knowledge, COB 61, p. 187.

With respect to the 1948 correction, Farriel testified:

"Q. Would you tell us how that came about?

"A. Well, I sold some piling, and the man that bought it seemed to know quite a bit about property in that area and he asked me to have this deed checked. So, I brought it over here to the Courthouse and Mr. and Mrs. Pugh worked there and I think that was their attorney, but anyway, he looked at the title and he said, yes, there was a mistake in the Range, so he made me a corrected deed. And I think that is what you have there.

"Q. Were you there when that was signed?

"A. Yes sir."

The correction deed, as stated supra, was executed on May 19, 1948; it was recorded on May 21, 1948, COB 66, page 526.

The testimony supra preponderates to the effect that the Farriels purchased the eastern five acres, the subject land which is our sole concern on this review. The sale executed by private act, as stated supra, was a matter of public record, and the correction was executed before a notary and recorded. The plaintiff therefore had knowledge of defendants' purchase and was fully aware of the ownership claim when it executed its extensive purchases in Livingston Parish.

is sustained. You don't have the right to—that testimony would be thoroughly inadmissible." Counsel asked if she was

to say nothing, and the Court replied, "Oh, yes, that is exactly right. I just sustained the objection."

When plaintiff brought the instant suit, its knowledge was expressed in its petition, supra, when it affirmed in Article four, supra, that defendants had purchased the eastern five acres. Plaintiff's petition was signed by its attorney. It was argued in this Court that the signing of a petition by an attorney was not the equivalent of a plaintiff's verification or judicial admission of the allegations of the petition.

Art. 863, LSA–C.C.P., provides:

"Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.

"Pleadings need not be verified, or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." [5]

▮ Art. 865, LSA–C.C.P. states that every pleading shall be so construed as to do substantial justice. "Each pleading must be reasonably construed so as to afford the litigant his day in court, arrive at the truth, and do substantial justice. The law abhors a multiplicity of suits." Succession of Smith, 247 La. 921, 175 So. 2d 269 (1965).

▮ "As a legal concept, the judicial confession is designed to dispense with evidence. It has the effect of withdrawing the subject matter of the confession from issue. * * * · In the landmark case of Frost-Johnson Lumber Co., supra, [133 La. 497, 63 So. 122], this Court pointed out that Article 2291[6] refers only to the confession made in the suit, that is, in the pleadings or note of evidence,

---

5. Art. 864, LSA–C.C.P., provides: "An attorney may be subjected to appropriate disciplinary action for a wilful violation of any provision of Article 863, or for the insertion of scandalous or indecent matter in a pleading."

In the case of Berglund v. F. W. Woolworth Company, La.App., 236 So.2d 266 (Fourth Circuit 1970), the Court stated: "* * * LSA–C.C.P. art. 864 indicates the reason for the requirement of article 863, namely, to fix the responsibility in event disciplinary action should be necessary for improper pleading. The pleading is not an end in itself but the means to an end and must be construed to do substantial justice. LSA–C.C.P. art. 865. * * * *"

6. "The judicial confession is the declaration which the party, *or his special attorney in fact*, makes in a judicial proceeding.

"It amounts to full proof against him who has made it.

"It can not be divided against him.

"It can not be revoked, unless it be proved to have been made through an error in fact.

"It can not be revoked on a pretense of an error in law." LSA–C.C., Art. 2291 (emphasis ours). Cf. 23 La.L.Rev. p. 406.

'for the purpose of dispensing from taking evidence * * *.'" Jackson v. Gulf Insurance Company, 250 La. 819, 199 So. 2d 886 (1967).

A litigant is estopped or bound by allegations of fact in his pleadings, but not by allegations which are only pronouncements or conclusions of law. Scurria v. Russo, La.App., 134 So.2d 679; Lawrence v. Recoulley, La.App., 235 So. 2d 437. However, "While a judicial confession under LSA–C.C. art. 2291 is defined as a declaration which a party makes in a judicial proceeding and is full proof against him, he is not estopped from contradicting his sworn allegations in the absence of a showing that his adversary was misled or deceived by reason of the averment. * * *" Mouledous v. Poirier, La.App., 221 So.2d 291 (1969). Also, a judicial admission in a pleading is not binding when made through an error in fact, such as through ignorance of or a misapprehension of the true facts. Modicut v. Rist, La.App., 98 So.2d 268; Gros v. United States Fidelity & Guaranty Company, La.App., 183 So.2d 670.

Plaintiff, as found supra, did not misapprehend the true fact that defendants had purchased the eastern five acres of the subject land. It knew by defendants' answer that they were going to attempt to prove at trial that they had possessed fifteen acres west of the eastern five acres. Plaintiff's counsel made a statement of fact in the present petition, supra, that defendants had purchased the eastern five acres, and whether we call such a statement a judicial admission or otherwise, we find that plaintiff is bound by its counsel's statement of fact; the record discloses neither error or conclusion of law nor error of fact. We find that the trial judge ruled correctly in disallowing extensive evidence in regard to the eastern five acres. We conclude that both lower courts correctly held that defendants were the true and lawful owners of the eastern five acres of the subject land.

There is no evidence of record showing that the western five acres acquired by Joseph J. Farriel by acquisitive prescription or the adverse prescription of thirty years was misunderstood by him to be the eastern five acres. The statement of the Court of Appeal, supra, treating of the possession of the western five acres is correct; we are in accord with the Court of Appeal's findings as summarized.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is affirmed; all costs of this Court to be paid by plaintiff.