387 So.2d 1227 (1980)
Adolphus W. DUNN
v.
Louis E. PAURATORE.
No. 13412.
Court of Appeal of Louisiana, First Circuit.
June 9, 1980.
*1228 Robert C. Lowe, New Orleans, for plaintiff, appellant.
Michael E. Soileau, Metairie, for defendants, appellees.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
This appeal involves an action brought for the reduction of the purchase price of a home based upon alleged defects in the residence.
On June 16, 1977, Dr. Adolphus W. Dunn purchased a residence in Jefferson Parish, Louisiana from Mr. and Mrs. Louis E. Pauratore.[1] Shortly thereafter, he discovered the roof leaked noticeably and the swimming pool did not maintain the proper water level. Additionally, gas leaks from an underground pipe were discovered and it *1229 was determined the combustion chamber of the heating unit needed replacement.
The plaintiff had the alleged defects remedied and, after doing so, notified the defendants of his action and demanded his costs be repaid. Some negotiations between the parties took place, but without success. This suit followed and, after trial on the merits, plaintiff's demands were dismissed. We affirm in part and reverse in part.
The Pauratores listed their home for sale with Marie W. Goodfellow, a realtor, on March 30, 1977. Almost simultaneously, Dr. Dunn became interested in the house and contacted the Pauratores who directed him to Mrs. Goodfellow. Dr. Dunn visited the house and made detailed inspections on at least two occasions. He then offered $102,000.00 for the house which was accepted by the owners. However, when an appraisal was made, the appraised value was somewhat lower and the parties then negotiated the actual sales price down to $92,000.00. Dr. Dunn seeks a reduction in price of $6,294.00 for the defects alleged.[2] Each of the defects will be discussed separately.

The Roof
The roof of this house had leaked in at least one place while the Pauratores resided there and a patch was visible of which Dr. Dunn was aware. In his inspections, he also saw a crack in the ceiling of the foyer. Large rains which fell some two months after the purchase revealed extensive leaking problems.
We find, however, the appellant and Mrs. Goodfellow discussed the roof and it became a factor in the price reduction negotiations. We note particularly the testimony of Mrs. Goodfellow at pages 12 and 13 of her deposition.
"Q You mentioned earlier that you had pointed out on one occasion a patch in the roof to Dr. Dunn, is that correct?
A That's right.
Q Did Dr. Dunn ever make any comments regarding the condition of the roof or the home in general to you?
A In negotiating we brought up the fact about the roof.
Q What was said regarding the roof?
A Well, it had been patched. They had had trouble with it, and it was-with the age of the roof eventually we felt like he would have to change it."
The rules pertaining to actions for the reduction of a price are found in Civil Code articles 2541, et seq. Article 2544 provides:
"The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action."
Therefore, our decision here must be governed by the codal provisions concerning redhibition. See Cipriano v. Superior Realty & Construction Corporation, 228 La. 1065, 84 So.2d 822 (1956).
Civil Code article 2521 states:
"Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices."
The evidence clearly preponderates to the effect the buyer here was aware the roof was old and it had previously leaked. Water damage was visible in at least one part of the interior of the house and some reduction in price was made by the seller in view of its condition. We hold the condition of the roof did not constitute a redhibitory defect.

The Swimming Pool
Similarly, the plaintiff's claim for defects in the swimming pool must be rejected. Dr. Dunn employed William Harper, Sr., a swimming pool maintenance and repair expert, to inspect the pool and report to him on its condition. Harper found that it was, in fact, leaking water and so reported to Dr. Dunn. In answer to a request for admissions of fact, the plaintiff admitted that he had Harper's report prior to the act of sale. Unconvincing testimony was offered at trial in mitigation of that admission.
*1230 In J. H. Jenkins Contractors, Inc. v. Farriel, 261 La. 374, 259 So.2d 882 (1972), the Supreme Court of this state quoted Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967), as follows:
"As a legal concept, the judicial confession is designed to dispense with evidence. It has the effect of withdrawing the subject matter of the confession from issue.... In the landmark case of Frost-Johnson Lumber Co., supra [133 La. 497, 63 So. 122], this Court pointed out that Article 2291 6 refers only to the confession made in the suit, that is, in the pleadings or note of evidence, `for the purpose of dispensing from taking evidence. . . .'"
We find plaintiff has admitted his awareness of the fact the pool was leaking prior to the act of sale and he, therefore, has no claim in redhibition for that defect.

The Gas Leak
Plaintiff has satisfactorily proved a gas leak existed at the time of purchase of the residence which requires a reduction in price for that defect. David Dawson, an expert gas fitter and plumber, related that in July of 1977, approximately one month after the sale, at Dr. Dunn's request, he located a gas leak in a pipe running to an outside barbecue pit. In his opinion, the leaks emanating from that pipe were taking place prior to the sale.
The only testimony presented in opposition by the defendant was that of Nims Knoblock, an air conditioning and heating expert, who admittedly was not familiar with the installation of gas barbecue pits or the design characteristics of the particular pipe. We find plaintiff is entitled to a reduction in price in the amount of $65.00 for the gas pipe replacement.

The Heating Unit
We further find plaintiff is entitled to a reduction in price for the replacement cost of the combustion chamber in the heating unit. When Dawson located the gas leak in the pipe running to the outside barbecue pit, he also found several leaks in the attic coming from the piping leading to the gas furnace. At that time he inspected the heating unit and advised plaintiff the combustion chamber was decayed. In his view, it presented a dangerous situation in that fire was escaping outside the casing. Although he acknowledged the furnace could have functioned, he was uncertain for how long realizing the condition was getting worse all along.
Efrain Lugo, an expert air conditioning and heating mechanic, was hired by Dr. Dunn in January 1978, to service the heating unit and he found, as did Dawson, the combustion chamber required replacement. At that time the heater wouldn't work because the combustion chamber had rotted out. This caused fumes to escape into the house and, in the opinion of Lugo, created a very dangerous situation. Lugo testified, ". . . the flames would come out of the heater and when the flames come out, it can cause anything around it to become ignited and cause a fire." Lugo also observed, in addition to flames escaping and fumes inside the house, the attic was blackened by soot.
Lugo further testified the plaintiff could not have ascertained the condition of the heating unit by looking at it. He stated one had to be trained in such matters to discover the defect and reiterated several times the defect existed on June 16, 1977, the date of the sale. He left no doubt the furnace was unsafe to operate when plaintiff purchased the house and opined the condition existed for some time prior to the sale. Under these circumstances, plaintiff should be allowed to recover the replacement cost of $887.00. The evidence established any attempt to repair the unit would have cost more that its replacement.
We are cognizant the purchaser of an older house can expect to replace some of the integrated component parts from time to time and should not expect the same useful life from them as afforded in a new house. However, in our view, the buyer of any house has the right to expect and is entitled to receive functional living conditions at the time of purchase. A heating *1231 unit which can not be operated safely at the time of sale deprives the occupant of an essential element of a home without which the purchase undoubtedly would not have been made. In this instance, we hold the seller warranted only that the heating unit was free from hidden defects on the date of the sale which would prevent its use to safely warm the interior of the house.
The warranty against redhibitory defects in sales of used equipment is not as extensive as in sales of new equipment but it does require the equipment operate reasonably well for a reasonable period of time. Hob's Refrigeration & Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La.1974); Bamber Contractors, Inc. v. Henderson Brothers, Inc., Number 13,303 on the docket of this court, rendered June 9, 1980; ___So.2d ___; Richardson v. French, 253 So.2d 602 (La. App. 2d Cir. 1971).
The defendant maintains, under the provisions of Civil Code article 2531, he should have been given an opportunity to repair the defects before Dr. Dunn had them fixed. Article 2531 provides:
"The seller who knew not the vices of the thing is only bound to repair, remedy or correct the vices as provided in Article 2521, or if he be unable or fails to repair, remedy or correct the vice, then he must restore the purchase price, and reimburse the reasonable expenses occasioned by the sale, as well as those incurred for the preservation of the thing, subject to credit for the value of any fruits or use which the purchaser has drawn from it.
"In any case in which the seller is held liable because of redhibitory defects in the thing sold, the seller shall have a corresponding and similar right of action against the manufacturer of the thing for any losses sustained by the seller, and further provided that any provision of any franchise or manufacturer-seller contract or agreement attempting to limit, diminish or prevent such recoupment by the seller shall not be given any force or effect."
Pursuant to this authority, the defendant argues since he was not allowed the chance to repair plaintiff cannot recover. A tender of the object sold for repair of vices, while a condition precedent to an action in redhibition, is not required to maintain an action in quanti minoris. Rausch v. Hanberry, 377 So.2d 901 (La.App. 4th Cir. 1979); Sokol v. Bob McKinnon Chevrolet, Inc., 307 So.2d 404 (La.App. 4th Cir. 1975). This is particularly true where, as here, the vices pose an immediate threat to the safety and well-being of the purchaser.
Plaintiff's claim for attorneys' fees must also be denied. Civil Code article 2545 specifically provides such an award cannot be made without a showing the seller knew of the defects in the object sold and failed to inform the buyer of them. There is no proof here the defendant knew of the gas leak or knew the combustion chamber of the heating unit was defective.
Judgment is now rendered in favor of plaintiff, Adolphus W. Dunn, and against defendant, Louis E. Pauratore, for the sum of $952.00, plus legal interest thereon from date of judicial demand until paid. All costs of court shall be paid by defendant.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] Both Mr. and Mrs. Pauratore were named as defendants. However, the record does not reflect Mrs. Pauratore was ever served with process and only Mr. Pauratore joined issue by the filing of responsive pleadings.
[2] Although plaintiff sued for $6,393.00, he now limits his claim to $6,294.00.