408 So.2d 946 (1981)
Davie MILLER, Plaintiff-Appellee,
v.
William Penn HARVEY, et al., Defendants-Appellants.
No. 14720.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1981.
*948 Fish, Montgomery & Robinson by Roy M. Fish, Springhill, for plaintiff-appellee.
C. Sherburne Sentell, Minden, for defendants-appellants.
Before PRICE, HALL and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
The defendant, William Penn Harvey, appeals a judgment against him on the main demand, based on contract, and on a reconventional demand to his third party demand, based on tort, and which rejected all of his demands on his third party action. This litigation resulted from the sequence of events described below.
W. W. Rice, owner of a crosstie mill, contracted with the defendant to operate the mill upon defendant's property and agreed to pay defendant $10.00 per week for the use of the property. The contract contained the following provision:
"W. W. Rice further agrees to hold harmless Penn Harvey and indemnify him should he be sued or held liable for any damages to any person or their property as a result of the said crosstie operation, and he likewise agrees to indemnify Penn Harvey should any creditor of W. W. Rice take any action against Penn Harvey or his land as a result of a crosstie operation being on Mr. Harvey's land. Mr. Rice further states that should Penn Harvey be brought into any litigation as a result of the operations of Mr. Rice on his property, or from the breach of any covenant herein, that Mr. Rice shall pay any court costs and attorney's fees incurred by Penn Harvey as a result of being drawn into any such litigation or from any breach of this agreement."
The mill was assembled on the Harvey place and operated there about two years pursuant to the contract between Rice and Harvey.
In the summer of 1979 Harvey was logging pine from two tracts and Rice asked him to see if he could buy the hardwood from those tracts to be cut into crossties. Harvey purchased the hardwood on the tracts from the landowners for the price of $1.00 per tie. Harvey was to be paid a total of $4.50 per tie by Rice from which Harvey was to pay the landowners for the timber.
Harvey cut the hardwood but was unable to get it hauled to the mill. Disagreement about the situation arose between Harvey and Rice and the latter decided to move his mill to another site. When Harvey realized the mill was being moved he locked the gate which provided access to the mill, thereby preventing Rice from moving it.
Rice planned to use legal proceedings to free his mill but before any steps were taken in that direction Harvey was approached by Davie Miller, the plaintiff. Miller was a distant relative of Rice's and from time to time worked with him in his timber business. Miller had helped Rice to move part of the mill before Harvey locked them out.
Miller asked Harvey what he would require to unlock the gate so the remainder of the mill could be moved. Harvey stated that he would unlock the gate only if he was paid for his logs. Miller and Harvey then entered into an agreement by the terms of which Miller bought the logs from Harvey. Their versions of the agreement differ. According to Miller he bought the logs from Harvey for $4.50 per tie cut from *949 them with an initial payment of $4,000 to be supplemented or reduced depending on how many ties the logs yielded. Harvey claims the price was $6,000 with an initial payment of $4,000 and the balance to be paid after Miller had sold the ties. Harvey contended that the price for the logs was firmly fixed at $6,000 and was subject to no adjustment regardless of the number of ties that were produced from the logs.
The logs did not produce the expected number of ties and Miller brought this action to recover a portion of his $4,000 advance on the purchase price of the logs. Harvey reconvened for the $2,000 balance he claimed as due on the sales price, and made a third party demand against Rice for any amount Harvey was held liable to Miller and for his attorney's fees and court costs under the indemnity provisions of the Harvey-Rice contract. Rice reconvened against Harvey for damages for the holding of the mill by locking the gate. There was judgment in favor of Miller and Rice on their claims and all of Harvey's demands were rejected. Harvey appealed. We affirm.
Harvey urges six assignments of error. First, that the trial court erred in finding that Miller had proved the oral contract as required by LSA-C.C. art. 2277. Second, that the trial court erred by substituting its deductions for the factual evidence required to prove the oral contract. Third, that the trial court erred by failing to apply the indemnity provisions of the contract between he and Rice. Fourth, that the trial court erred in finding that Rice had been denied access to the mill and awarding him damages for the holding of the mill. Fifth, that the trial court erred in finding that only 682 ties had been cut from the logs. Sixth, that it was error to find that the oral contract was between Miller and Harvey and that Miller had not been acting for Rice.

ASSIGNMENTS # 1, 2 and 6
Each of these assignments address the log purchase contract between Miller and Harvey; therefore, we will consider them together. The first two assignments go to the proof of the oral contract between Miller and Harvey.
An oral contract for an amount in excess of $500 must be proved by one credible witness and other corroborating circumstances. LSA-C.C. art. 2277.[1] The plaintiff can be the credible witness and the corroborating circumstances need only be general in nature. Ory v. Griffin, 162 So.2d 97 (La.App. 1st Cir. 1964); Foshee v. HandEni's Realty Co., 237 So.2d 437 (La.App. 3d Cir. 1970). A trial court's finding of corroboration is entitled to great weight. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977).
Mr. Miller testified that he bought the logs on a per tie basis and that his initial $4,000 payment was to be supplemented or reduced based on the number of ties produced. The trial judge who saw and heard Miller testify found him a credible witness and we find no error in that conclusion.
Included among the corroborating circumstances found by the trial judge were Harvey's prior contracts for the sale of logs had been on a per tie basis and in his answer, reconventional demand and third party demand, Harvey alleged he was to have been notified when the logs were cut up so that he could ascertain the number of crossties they produced. The fact that Harvey's past sales had been on a per tie basis tends to corroborate Miller's version of the contract. Further, Harvey's allegations that he was to have the opportunity to determine how many ties were cut also corroborates Miller's testimony that the agreement was on a per tie basis. The trial judge was correct in considering this a corroborating fact since Harvey was bound by that allegation. J. H. Jenkins Contractors, *950 Inc. v. Farriel, 261 La. 374, 259 So.2d 882 (1972). Both these facts strongly corroborate Miller's version of the oral contract. We conclude that Miller's testimony is sufficiently corroborated by these circumstances and the contract was proved in compliance with LSA-C.C. art. 2277. The corroboration is factual and not merely the conclusions of the trial judge as contended by appellant.
The sixth assignment of error is addressed to the finding that the log purchase contract was between Miller and Harvey and that Miller was not acting for Rice. This is a question of fact and we may not disturb the trial judge's conclusion in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The record contains testimony by both Miller[2] and Rice[3] that Rice was not involved in Miller's purchase of the logs. There is substantial evidence to support the trial judge's conclusion that the contract was only between Miller and Harvey. Assignments of error no. 1, 2, and 6 are without merit.

ASSIGNMENT # 5
This assignment goes to the trial judge's finding that 682 crossties were produced from the logs.[4] Again, this is a question of fact and we may not upset the trial judge's determination absent manifest error. Arceneaux, supra.
The trial judge based his finding on the testimony of an expert witness, Mr. Curtis McDaniel. McDaniel, who had a degree from Louisiana State University in Forestry, and who had thirty years experience as a forester, examined both tracts from which the logs were cut and determined the number and size of the trees. Using that information he mathematically calculated the maximum number of ties that could have been produced at 682.
There were estimates from other witnesses as to how many ties could have been produced. There was testimony that it was not possible to accurately estimate the number of ties that could be produced. The trial judge heard all of this testimony but accepted that of McDaniel based on his qualifications, knowledge and careful gathering of data before preparing his estimates.
The trial judge's determination of the most credible expert witness and testimony will not be disturbed unless clearly erroneous. Guidry v. Davis, 382 So.2d 250 (La.App. 3d Cir. 1980); Necaise, Inc. v. Vicknair, 391 So.2d 1347 (La.App. 4th Cir. 1980). In view of McDaniel's eminent qualifications and careful study to provide the base data for his calculations, we cannot say that the trial judge was clearly erroneous in accepting his testimony over that of the other witnesses. This assignment of error is without merit.

ASSIGNMENT # 3
This assignment is directed at the trial judge's failure to apply the indemnity provisions *951 of the contract between Rice and Harvey. The trial judge found that the indemnity provisions only applied to suits involving the operations of the mill on Harvey's property. The logs involved here were never on Harvey's property and were not cut into crossties until the mill was moved to its new location. The trial judge concluded, therefore, that the indemnity provisions were inapplicable.
Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof. Straley v. Calogne Drayage & Storage, Inc., 350 So.2d 1231 (La.App. 4th Cir. 1977); McElroy Metal Mill, Inc. v. Hughes, 322 So.2d 822 (La.App. 2d Cir. 1975); First National Bank, Etc. v. Louisiana Purchase, 346 So.2d 345 (La.App. 4th Cir. 1977).
The language of the contract shows that it was the intent of the parties to protect Harvey from litigation resulting from the operation of the mill on his land. This litigation arises from Harvey's contract with Miller and the failure of the logs to produce the expected number of crossties. This is not within the scope of the indemnity agreement and the trial judge was correct in concluding that the indemnity provisions did not apply in this case.

ASSIGNMENT # 4
This assignment complains of the finding that Rice had been denied access to his mill and the award of damages for wrongful seizure.
We think that the actions of Harvey are better classified as a conversion rather than a wrongful seizure. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial or inconsistent with the owner's rights. Theriac v. McKeever, 405 So.2d 354, (La.App. 2d Cir. 1981). Harvey, in order to gain advantage in the dispute about the logs, locked his gate denying Rice access to his mill and kept it locked until Miller "ransomed" the mill by making his arrangement with Harvey. This is a wrongful act of dominion, denying access, over the property of another, Rice's mill, inconsistent with the owner's right to use his property. The use prevented here was the moving of the mill to new location where it was to be set up and operated.
Harvey contends his act was not wrongful. First, he claims he was entitled to retain the mill by virtue of a lessor's privilege. The lessor's privilege is for unpaid rent and other obligations of the lease. LSA-C.C. art. 2705.[5] The alleged debt which caused Harvey to retain the mill was that for payment for the logs. That is not rent or another obligation of the lease. Thus, Harvey cannot clothe his conduct with legitimacy on the theory of lessor's privilege.
Harvey also contends that he was entitled to retain the mill because of his expenses. He relies on LSA-C.C. art. 3225[6] and Hopper *952 v. Bills, 255 La. 628, 232 So.2d 296 (1970) for that proposition. Those authorities do not support him here.
When one has the property of another and incurs expenses for its preservation he may retain the property until repaid. LSA-C.C. art. 3224;[7] LSA-C.C. art. 3225; Hopper, supra. The expenses Harvey claims support his right to retain the mill are not expenses he incurred for its preservation, instead they are the expenses he incurred in buying and cutting hardwood timber. Therefore, the conversion is not legitimated by the rule Harvey relies on.
Finally, Harvey contends that no damages are due since Rice never personally requested release of the mill. He relies on Oge v. Resolute Insurance Company, 217 So.2d 738 (La.App. 3d Cir. 1969) for that proposition. The Oge case is of no avail to Harvey. In Oge the court found that the defendant had plaintiff's implied permission to take possession of the property. Thus, the court said that the taking was not wrongful and that the detention was not wrongful as plaintiff never asked for the return of his property. We agree that when one gives another permission to take possession of his property he must show that the permission has ended by requesting its return before a conversion can be considered committed. That is the possession with permission must be converted into wrongful possession. However, in this case there was no permission, implied or otherwise, for Harvey to take possession of the mill. Further, the attempt by Rice to move the mill shows a contrary desire. This assignment is without merit.
The judgment appealed from is affirmed. All costs of this appeal are assessed against defendant-appellant Harvey.
AFFIRMED.
NOTES
[1] C.C. art. 2277All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.
[2] Miller testified"Q. How did you come to get involved in this deal with Mr. Harvey?

A. Well, I was hauling his ties and Penn had these logs banked and, well, I've worked with Wheel and Wheel works for me in Heflin and Penn wanted all of his money for the logs he had banked and Wheel couldn't come up with it, couldn't pay it, he didn't have a chance, so I told him that I would just buy `em myself.
Q. And did you buy them yourself?
A. Yes.
Q. Did Mr. Rice have anything to do with it at all?
A. No, sir." (Id. tr. 74)
[3] Rice testified"Q. Did you have any discussion or conversation with Mr. Miller about the situation?

A. Nothing, only the gate was locked and he knew it was locked, too, but we didn't have no estimation about it, what to do and what not to do because I didn't tell him.
Q. Did you have anything to do with paying Mr. Harvey?
A. No, sir.
Q. Did you have anything to do with these logs at all?
A. No, sir, none whatever." (Id. tr. 103)
[4] "The court accepts the testimony of Mr. McDaniel, whom the Court finds to be eminently qualified, and the Court is convinced that Mr. McDaniel made an accurate study and demonstrated superior knowledge in his field.... Therefore the court finds that there should have been 682 crossties cut from the logs..." Id. tr. 47.
[5] Art. 2705The lessor has, for the payment of his rent, and other obligations of the lease, a right of pledge on the movable effects of the lessee, which are found on the property leased.

In the case of predial estates, this right embraces everything that serves for the labors of the farm, the furniture of the lessee's house, and the fruits produced during the lease of the land; and in the case of houses and other edifices, it includes the furniture of the lessee, and the merchandise contained in the house or apartment, if it be a store or shop.
But the lessee shall be entitled to retain, out of the property subjected by law to the lessor's privilege, his clothes and linen, and those of his spouse and family; his bed, bedding and bedstead, and those of his spouse and family; his arms, military accoutrements, and the tools and instruments necessary for the exercise of the trade or profession by which he gains his living and that of his family; one cooking stove and utensils of said stove, plates, dishes, knives, forks and spoons; all pots, pans and other cooking utensils; one dining table, and dining chairs necessary for himself and his family.
[6] Art. 3225Against the owner of the thing, his right is in the nature of that of pledge, by virtue of which he may retain the thing until the expenses, which he has incurred, are repaid.

He possesses this qualified right of pledge, even against the creditors of the owner, if they seek to have the thing sold. He may refuse to restore it, unless they either refund his advance, or give him security that the thing shall fetch a sufficient price for that purpose.
[7] Art. 3224He who, having in his possession the property of another, whether in deposit or on loan or otherwise, has been obliged to incur any expense for its preservation, acquires on this expense for its preservation, acquires on this property two species of rights.