PEATROSS, J.
hThis case arises from a suit filed by Eddie Staten against Dorothy McNeal, her homeowner’s insurer, Allstate Insurance Company (“Allstate”), and McCoy’s hardware store for injuries Mr. Staten sustained while performing flooring work in Ms. McNeal’s house.[1] After a trial on the merits, the trial judge found that responsibility for the accident lay with Mr. Staten and McCoy’s, 70 percent and 30 percent, respectively. He further found Ms. McNeal and Allstate to be without liability. From this ruling, Mr. Staten appeals. For the reasons set forth herein, we affirm.

FACTS

In December 1999, Ms. McNeal hired Mr. Staten, a handyman, to lay a new vinyl floor in her kitchen. Ms. McNeal agreed to provide the supplies for the job and pay Mr. Staten approximately $80 for his services. She had previously employed Mr. Staten on a number of occasions, for a myriad of tasks around her home, including, most notably, to lay vinyl flooring in her laundry room some twenty years earlier.[2] By his own admission, Mr. Staten had been in the flooring business for some 25 or more years.
The pair went to a local McCoy’s hardware store to buy a sheet of vinyl and the accompanying supplies needed for the job. Mr. Staten noticed that the store did not have the brand of glue (a non-flammable brand) he normally used for such a job, so he consulted a McCoy’s employee as to which alternative brand could be used. The employee retrieved a can of Dglue and recommended it be used for the project.[3] Unfortunately, the McCoy’s employee was mistaken. The glue he suggested was, in fact, highly flammable and not suitable for this project (without proper precautions being taken).
Ms. McNeal and Mr. Staten admit to purchasing the glue without reading the label on the can, which was clearly marked “flammable.” After returning to Ms. McNeal’s house, Mr. Staten began the work, without having opened a window or taken similar ventilation precautions. While he was applying the glue, the vapors from the can ignited, causing an explosion, which left Mr. Staten seriously injured and caused nearly $30,000 in damages to Ms. McNeal’s home.
Mr. Staten and his wife sued Ms. McNeal and Allstate for his injuries and Allstate and Ms. McNeal, in turn, sued Mr. Staten for the damages to her house. The suits were consolidated. Allstate and Ms. McNeal also sued McCoy’s.[4] After the one-year prescriptive period had run, Mr. Staten amended his petition and sued McCoy’s hardware store as well.
For some time during this litigation, it was uncontested that the explosion was caused by a pilot light in the water heater, which was located in the laundry/utility room, adjacent to the kitchen. Mr. Staten’s expert, John Maroney, opined that the water heater was installed contrary to code and in violation of the heater’s warn *363 ing label. More to the point, he stated | sthat the heater had not been installed 18 or more inches from the ground, as recommended by code and the warning label. To the contrary, Allstate’s “fire and origin” expert, Gary Brooks, concluded that the water heater’s warning label was ambiguous and that the pilot light from the kitchen stove, not the water heater, caused the explosion. The basis for his “stove theory” was derived from a telephone conversation with Elisha McNeal (“Dee”), Ms. McNeal’s adult daughter, who witnessed the explosion. During this telephone conversation, Dee conveyed to Mr. Brooks that she saw a fire start from the stove area and spread out across the kitchen.
A bench trial was held and Judge Alvin Sharp ruled that Ms. McNeal and Allstate were without fault; however, Mr. Staten and McCoy’s bore 70 percent and 30 percent responsibility, respectively. Mr. Staten’s claim against McCoy’s was ruled to have prescribed. Mr. Staten now appeals, assigning two errors.[5]

DISCUSSION

Assignment of Error One (verbatim): The statements in Allstate’s pleadings as to origin of the fire are judicial confessions which are binding on Allstate.

Mr. Staten first points to Louisiana Civil Code article 1853, which states:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
|4From this, he argues that the record “strongly supports” that Allstate took advantage of Dee McNeal’s “lapse of memory” regarding her description of what happened and substituted its own, inaccurate version of the origin of the fire. Moreover, Mr. Staten contends that Allstate made a judicial confession that the water heater actually caused the explosion.
Mr. Staten cites C.T. Traina Inc. v. Sunshine Plaza, 03-1003 (La.12/3/03), 861 So.2d 156, to buttress this position. In C. T. Traína, supra, the court held that an admission by a party in a pleading is a “judicial confession” and is full proof against the party making it. He states that “it is obvious that Dee McNeal’s account of the fire changed several years into the litigation, under circumstances which give rise to the ... inference that her original account is correct and the modified version is incorrect.”
Ms. McNeal initially responds by citing Rosell v. ESCO, 549 So.2d 840 (La.1989), which states that a court of appeal should not set aside a trier of fact’s finding unless it was manifestly erroneous or clearly wrong. See also, Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). The appellate court should not determine whether or not the fact finder’s conclusion was right or wrong, but, rather, whether or not it was a reasonable one, given the entirety of the record. Rosell, supra.
Ms. McNeal contends that Mr. Staten’s argument regarding judicial confession is misplaced. She states that Mr. Staten is simply unable to prove, with any certainty, that the ignition point was the water heater, rather than the stove. She notes that Allstate originally identified the water heater as the ignition point, but subsequently amended its pleadings, based on an 1 Berror of fact, to reflect that it was the stove, without objection or response from Mr. Staten. Accordingly, Ms. McNeal ar *364 gues that no prejudice was caused to Mr. Staten in preparation for this trial.
From this, she cites Farmer’s-Merchants Bank & Trust Co. v. St. Katherine Ins., 93-552 (La.App. 3d Cir.3/9/94), 640 So.2d 353, writ denied, 94-0841 (La.5/13/94), 641 So.2d 204, in which a defendant was allowed to amend its answer nearly five years after initial filing and over objection by the plaintiff. In Farmer’s-Merchant, swpra, once amendment was allowed, judicial admission was revoked. Similarly, in Sinha v. Dabezies, 590 So.2d 795 (La.App. 4th Cir.1991), writ denied, 592 So.2d 1315 (La.1992), the court stated that a statement in a pleading may be amended if it does not prejudice the opposing party and was based on an error of fact. See also, J.H. Jenkins Contractors, Inc. v. Farriel, 261 La. 374, 259 So.2d 882 (1972). Accordingly, she states that, when the trial court allowed her and Allstate to amend their pleadings, it revoked any judicial confession made prior to that point.
Ms. McNeal further argues, in the alternative, that, even if she (and the other defendants) had not amended her pleadings, it “is clear” that there would still be no judicial admission because Mr. Staten allowed the testimony of two witnesses, without objection, who stated that the ignition source was the stove. See, Hazelwood Farm, Inc. v. Liberty Oil And Gas Corp., 02-266 (La.App. 3d Cir.4/2/03), 844 So.2d 380, writs denied, 03-1585 (La.10/31/03), 857 So.2d 476 and 03-1624 (La.10/31/03), 857 So.2d 476. We agree.
| (¡In the case sub judice, the record before us reflects that Ms. McNeal and Allstate amended their respective pleadings in a proper fashion and said amendment revoked the prior pleadings.
The actual wording of Mr. Staten’s first assignment of error, stated verbatim, supra, is correct; however, it neglects the fact that Ms. McNeal and Allstate amended their respective pleadings properly, with ample notice to their opponents and with permission of the court. Allstate received the report of Mr. Brooks, after which it amended its pleading based on an error of fact — i.e., that the ignition point was the stove, not the water heater.
Mr. Staten cites C.T. Traina, supra, and, in brief, states that “... the argument here [on appeal] is not about procedural formalities ...” We disagree. We find that, even by its own wording, this assignment or error is precisely about “procedural formalities.” In C.T. Traina, supra, the court cited J.H. Jenkins Contractors, Inc., supra, and stated that a judicial confession should not estop a curative amendment absent a showing that the adversary was misled or deceived. Nothing in this record reflects that Mr. Staten was deceived or misled, nor do we see a reason which, given the standard of review set out in Rosell, supra, and Stobart, supra, convinces us to overturn the trial court’s ruling in this case. He would have this court believe that Ms. McNeal and Dee were in a better position to gauge the dangers inherent in working with flooring adhesives in closed spaces than was he. We cannot say, on this record, that that is the case. For these reasons, we reject this assignment of error.

_[jAssignment of Error Two (verbatim): The trial court’s decision is manifestly erroneous.

Mr. Staten next argues that the trial court’s ruling was manifestly erroneous for two reasons. First, he states that all evidence leads to the conclusion that the water heater, not the stove, was the ignition source. Second, Mr. Staten contends that, even if Ms. McNeal is not responsible for the (allegedly) improper installation of the water heater, the “overwhelming weight of evidence” leads to the *365 conclusion that she is at least equally as negligent as was he. He asserts that, as a homeowner, Ms. McNeal should have been aware of the two open flames in her house; and, alternatively, that he was not in as good a position to be aware of the pilot lights. He reasserts that all witnesses at trial concurred that the warning label on the water heater was conspicuous and clearly provided that the appliance should be installed so that it was at least eighteen inches from the ground. From this, Mr. Staten emphasizes that Ms. McNeal’s water heater was not installed properly and, thus, she bears some measure of responsibility.
In support of these positions, Mr. Staten notes that the “duty to warn” is incumbent upon a manufacturer and, in turn, the “duty to read” is incumbent upon the purchaser. See, Potmesil v. E.I. DuPont deNemours Co., Inc., 408 So.2d 315 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1097 (La.1982); Hale Farms, Inc. v. American Cyanamid Co., 580 So.2d 684 (La.App. 2d Cir.1991), unit denied, 586 So.2d 537 (La.1991). Mr. Staten argues that Ms. McNeal was fully capable of reading the warning label on the water heater; and, because she did not set it more than eighteen |sinches off the ground, she is partly responsible for the explosion. Similarly, he notes that Ms. McNeal was present (at the store) when Mr. Staten admitted that the glue was not the type he normally employed. From this, Mr. Staten contends that she was just as capable of reading the “flammable” warning label as he was.
Mr. Staten also argues that the warning label on the water heater was more than conspicuous and perfectly clear in its meaning. He states that “[a]ll witnesses who were qualified to testify about building codes agreed that the hot water heater was installed in violation of code and posed a risk of ignition.” He points to the testimony of various witnesses, to wit: John Maroney, a civil engineer and expert witness for Mr. Staten testified:
Q: It did not comply with the installation instructions found on the labeling and warnings and hot water tanks sold in the nineties. Would that be correct?
A: That’s correct.
Mr. Robert Newell, an electrical engineer and fire and origin expert testified:
A: [T]he water heater should have been raised [eighteen] inches — the flames [eighteen] inches above the floor.
Q: What’s your basis for that opinion?
A: It’s the National Fuel Gas Code.
From this, Mr. Staten asserts that it is improper to argue, as Ms. McNeal does, that she should not be held accountable or responsible for failing to install and maintain her water heater under code.
|9In summation, Mr. Staten reasserts that the “overwhelming” amount of evidence points to the water heater, not the stove as the cause of the explosion in this case. Accordingly, he asks that fault be redistributed by this court as follows: Mr. Staten, 25-30 percent; Ms. McNeal 25-35 percent and McCoy’s 35-50 percent.
Ms. McNeal responds to the second assignment of error by restating Rosell, supra, and Stobart, supra. From this line of jurisprudence, Ms. McNeal notes that Dee testified that she saw the flame begin from the stove, not the water heater. She further asserts that, even assuming, arguen-do, that the explosion was caused by the water heater, Mr. Staten still failed to show that Ms. McNeal was negligent as a homeowner with respect to where the water heater was located in her house. She supports this argument by citing Kendall v. Weingarten Realty Management Co., *366 33,903 (La.App.2d Cir.9/27/00), 769 So.2d 171, in which this court stated that a homeowner is only liable for an unreasonably dangerous condition which exists in her home if she knew or reasonably should have known of its existence. She contends that is not the case in the instant matter.
Ms. McNeal further claims that nothing in the record reflects that Dee had been mistaken or suffered a “memory lapse” when she described, in detail, that the flames began on the stove and ultimately led to the explosion. She points out that Dee affirmatively stated that she would never forget seeing it, as it reminded her of a scene from the movie “Backdraft."
Next, Ms. McNeal points out that Allstate’s expert, Mr. Brooks, had investigated nearly 2,500 fires in his career. Mr. Brooks conceded that |inMr. Staten’s version of the story was not impossible; but, considering Dee’s statements, it was highly improbable.
Ms. McNeal further argues that Mr. Staten was actually encumbered by a higher duty than she was in this case. She cites Hoyt v. Wood/Chuck Chipper Corp., 92-1498 (La.App. 1st Cir.1/6/95), 651 So.2d 1344, writ denied, 95-0753 (La.5/19/95), 654 So.2d 695, in which the court ruled that a repairman has the duty to perform repairs in a safe manner. Mr. Staten, she argues, is a tenured repairman with a knowledge of the tools and accessories (including glue) and was, therefore, in a better position to choose the glue than was she. She notes that, by his own admission, Mr. Staten inspected the glue and took the McCoy’s employee’s word on it being fit for use on this job. Ms. McNeal states that she has no knowledge regarding flooring and should not be held responsible for the selection and application of glue in this case.
Similarly, Ms. McNeal states that Mr. Staten’s argument that her water heater was in violation of National Fuel Gas Code was rejected even by his own expert witness in this case. She argues that she did not even know of the existence of the National Fuel Gas Code, much less did she know whether or not her water heater was properly installed. She points to the trial testimony of Mr. Newell, in which the following colloquy took place:
Q: ... Based on your knowledge and experience you would not have expected Ms. McNeal to have read the gas fuel code unless she was involved in a lawsuit. Isn’t that correct?
A: That’s correct.
|nQ: You’re not aware of any publication anywhere that suggests that homeowners actually are familiar with the National Gas Fuel Code are you?
A: No.
From this, Ms. McNeal contends that Mr. Staten’s argument regarding her water heater violating code is misplaced.
In summation, Ms. McNeal asserts that there is little evidence to support a conclusion consistent with Mr. Staten’s story- and certainly not enough to overturn in light of Rosell, supra, and Stobart, supra. We agree.
Our review of the record reflects no manifest error by the trial judge in the case sub judice. Regardless of the alleged change in her story, Dee testified very clearly at trial regarding what she saw, stating during direct examination:
Q: Is there any question in your mind as we sit here today .... that [the flames] were coming from the stove as opposed to ... the utility room ... ?
A: No. I’m pretty sure it came from the area of the stove.
*367 Q: Any doubt at all in your mind about that?
A: None at all.
Further, despite repeated attempts to show otherwise, Dee maintained that she saw the fire evolve and spread from the stove, not the water heater or utility room. She routinely maintained that it reminded her of scenes from the movie “Backdmft.” Moreover, on cross examination by McCoy’s attorney, she stated:
Q: ... Isn’t it true that you asked Mr. Staten if [he] wanted [you] to open the patio door?
A: Yes sir. It is.
|1gQ: And Mr. Staten told you no. Don’t worry about opening the patio door. Isn’t that right?
A: Yes sir.
Irrespective of the fact that Dee made no mention in her deposition of the stove or the “stove area” as the ignition source (the contradictions of which Appellant’s attorney repeatedly pointed out), the fact is that her trial testimony consistently indicated that the flames were “coming towards her” from the stove. Similarly, as mentioned above, Dee testified that Mr. Staten, an experienced handyman, refused her suggestion/offer to provide ventilation by opening a patio door. Accordingly, the evidence suggesting that the stove was the point of origin is ample. Given these facts, and the weighty standard of review set out by Rosell, supra, and Stobart, supra, we cannot say the trial judge was manifestly erroneous in ruling as he did. For these reasons, we reject this assignment of error.

McCoy’s Liability

In its brief, McCoy’s raises an additional issue with regard to its liability in this matter. It argues, alternatively, that the trial judge in the case sub judice incorrectly applied the law by finding McCoy’s 30 percent at fault.
McCoy’s points out that, under the Louisiana Products Liability Act (“LPLA”), a non-manufacturing seller of products is responsible for damages in tort only if: 1) the product he sold was defective; 2) he knew or should have known that the product he sold was defective or 3) he failed to declare its defect. See, Slaid v. Evergreen Indem., Ltd., 32,363 (La.App.2d Cir.10/27/99), 745 So.2d 793. Moreover, a non-manufacturing seller is not required to inspect a product prior to sale to determine the possibility of inherent defects or vices. Slaid, supra. Furthermore, she cites Hesse v. Champ Serv. Line, 99-1259 (La.App.2d Cir.2/2/00), 758 So.2d 245, for the proposition that a retailer has no duty to warn purchasers of product risks about which the buyer knows or should be aware. McCoy’s contends that Mr. Staten, an experienced handyman, should have been well aware that, without proper ventilation precautions, the glue he employed could ignite.
Accordingly, McCoy’s urges that Louisiana jurisprudence does not support the trial judge’s finding that McCoy’s was 30 percent liable in this case.
Initially, we note that McCoy’s did not file an answer to the appeal in this case. Our review of the record reflects no error of law by the trial judge with regards to the apportionment of liability in the case sub judice. We have already ruled that no manifest error existed in this case (see, supra). Thus, this issue is not properly before this court.

CONCLUSION

For the reasons set forth herein, the judgment of the trial court finding no fault on behalf of Dorothy McNeal and Allstate Insurance Company; and, in turn, finding that Eddie Staten and McCoy’s hardware *368 store were 70 and 30 percent responsible, respectively, is affirmed. Costs of this appeal are assessed to Eddie Staten, et ux.
AFFIRMED.

. Two suits arose from this accident, but they were consolidated. This is discussed further, infra.

. This job included laying the flooring under a gas water heater, the relevance of which will become clear, infra.

. We note that both Ms. McNeal and Mr. Staten testified that he (Mr. Staten) did not search for the glue, but, rather, the employee searched for, retrieved and recommended it be used for laying vinyl floor.

.Attorneys for each of these respective parties filed briefs in this case. They are collectively referred to as "Ms. McNeal” for the purposes of this opinion.

. We note that Mr. Staten did not appeal the prescription portion of the trial judge’s ruling.