468 So.2d 778 (1985)
SUCCESSION OF Eros Crosby CRAIN, Jr.
No. 84 CA 0179.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
Rehearing Denied May 20, 1985.
Writ Denied June 17, 1985.
*779 Robert A. Anderson, Jr., Covington, for Rebecca Crain Christ, appellant.
Joseph E. Bishop, Jr., Mandeville, for Sharon Haas Crain, appellee.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
This succession proceeding is before us for the fourth time. Previous decisions are reported at 413 So.2d 912 (1982), 450 So.2d 1372 (1984), and 450 So.2d 1374 (1984). The present appeal is from the June 1, 1983 judgment homologating the accounting filed by the decedent's surviving spouse in community and testamentary executrix covering the period commencing with the decedent's date of death, August 13, 1977, through March 17, 1981.
Rebecca Crain Christ, one of decedent's two children by his first marriage, filed oppositions to all six accountings the testamentary executrix filed. A hearing was held on May 19, 1982 on her opposition to homologation of the accountings. With few exceptions the Trial Judge homologated the sixth accounting covering the period August 13, 1977, through March 17, 1981.
Numerous judgments have been rendered on a variety of rules to show cause filed by the combatants, surviving widow and daughter of the decedent.
A brief summary of relevant facts may prove useful in resolving the web of confusion this succession proceeding has produced.
Eros Crosby Crain, Jr. died testate on August 13, 1977 at the age of 49. He was survived by Sharon Haas Crain, his second wife, and two children born of his first marriage, namely Rebecca Crain Christ and Patricia Crain McDonald, both of whom were majors when their father died. The decedent's estate consisted solely of his undivided one-half interest in community property acquired by him and Sharon Haas Crain.
On February 8, 1973 the decedent executed a last will and testament, in statutory form, designating Sharon Haas Crain his testamentary executrix and containing the following substantive language:
"I confirm the usufruct which my wife, Sharon, enjoys under the law to *780 my interest in the community property which we own at the time of my death. I further give to my wife, Sharon, the disposable portion of my entire estate, together with the usufruct thereof.
"Subject to the foregoing, and to the payment of claims, funeral and administration expenses and estate taxes, I bequeath all the rest and remainder of property that I may own at my death to my children, or per stirpes, to the descendants of any of them that predecease me, conjointly." (Emphasis ours).
When the decedent's will was executed, if an attempt were made to burden the legitimate with a usufruct in favor of the surviving spouse, such disposition would have been vulnerable to an action for reduction by the forced heirs unless the forced heirs were born of the marriage to the surviving spouse or adopted by the decedent and the surviving spouse. Succession of Williams, 224 La. 871, 71 So.2d 229 (1954) and cases cited therein; C.C. art. 916.
Before the decedent's death C.C. art. 916.1 was added by Act 227 of 1976 and took effect October 1, 1976. That Article was the controlling law, at the time of decedent's death, as to the usufruct portion of decedent's Last Will and Testament. That Article created a legal usufruct "in the family home" in favor of the surviving spouse "during his or her natural life" but terminable upon remarriage "unless the usufruct has been confirmed for life or any other designated period to the survivor by the last will and testament ... and the rights of forced heirs to the legitime shall be subject to any such usufruct, which usufruct shall not be an impingement upon the legitime." The term "family home" is defined by C.C. art. 916.1 as "community property last occupied by the deceased and the surviving spouse as a home, and in the case of city, town, or village property shall include not more than one lot or lots of ground on which the family residence is actually situated, and in the case of rural property shall include not more than twenty acres of land on which the family residence is situated." (Emphasis supplied).
On May 19, 1982, at the hearing on the opposition to the accountings, including the one for the period August 13, 1977, through March 17, 1981, hereafter "comprehensive accounting", the surviving widow testified that she and the decedent occupied the residence at 260 East Pearl Drive, being Item I(1) of the Sworn Descriptive List of Assets, as the family home. That residence is described as Lot 16, Square 1, River Oaks Subdivision and the List of Assets states its fair market value on the date of decedent's death was $115,000.00. The comprehensive accounting shows that the mortgage balance on the family home on August 13, 1977 was $34,841.50. The widow was 36 years old when her husband died. The comprehensive accounting also reflects additional indebtedness, both community and succession, of $34,995.00, excluding administration expenses, federal estate tax, and Louisiana inheritance and estate transfer taxes, on August 13, 1977.

ASSIGNMENTS OF ERROR
Opponent-Appellant, Rebecca Crain Christ, assigns as errors the District Court's June 1, 1983 judgment that:
1. Appellee's making interest free and unsecured loans or advances of $104,570.48 to two corporations owned by decedent's succession and appellee benefitted the succession and did not violate the testamentary executrix's duties as a fiduciary;
2. The tax penalty and interest assessed for the untimely filing of the Federal Estate Tax Return and payment of the tax is properly an expense of the succession rather than a personal liability of appellee;
3. Interest payments totaling $9,070.25 on the family residence mortgage and maintenance expenses of $10,770.59 incurred on that property are expenses of the succession rather than appellee personally; and
4. Interest expenses attributable to a loan made by appellee, without advance authority of the Court, to pay 1977 Federal *781 income taxes, which loan was secured by a mortgage on land owned by the succession and appellee, was properly charged as a succession expense.

ISSUES
The following issues are presented for us to resolve:
1. Did the interest free and unsecured loans or advances to the family owned corporations constitute a detriment to the succession and also a violation of the fiduciary duties of the testamentary executrix?
2. Is the tax penalty and interest assessed by Internal Revenue Service for the late filing of the estate tax return and payment of estate taxes a personal liability of appellee-testamentary executrix because of her actions and/or omissions?
3. Are interest expenses on the family home mortgage and maintenance expenses of the family home obligations of the usufructuary rather than the succession?
4. Is interest attributable to a loan for paying income taxes of decedent and the survivor in community a succession expense if court approval of the loan was not obtained until after the loan was made?
5. Is formal acceptance of a legal usufruct prerequisite to holding the usufructary responsible for paying interest expenses on family home mortgage and maintenance expenses of the family home?

LOANS OR ADVANCES TO FAMILY OWNED CORPORATIONS
Appellee-testamentary executrix candidly testified that she not only commingled personal funds with succession funds but also made loans or advances to Crain & Haas, Inc. and Land Ho, Inc. Appellee owned one-half interest in each corporation and her husband and later his succession owned the other one-half; she was or functioned as president of each corporation after decedent's death. Appellee transferred money belonging to her and the succession to the corporations on an "as needed" basis "to keep the corporations afloat". As president of the corporations she withdrew corporation funds, including loans from her and the succession, for her personal use. As money became available to one or both of the borrower corporations to repay some of the money lent, funds were transferred from one or both corporations to the bank account made up of commingled personal and succession funds. The loans or advances were made without any formalities being observed or any obligation to pay interest on the funds so lent; likewise, no security was asked for by appellee and none given by the borrower corporations.
Some of the money lent or advanced to Land Ho, Inc., the construction corporation, was used to build a house on corporation land; the house and lot was sold to Ms. Jacqueline Carr, appellee's counsel of record, on October 21, 1981 for what the corporation had in it, namely $90,697; before the May 19, 1982 hearing on appellant's opposition to the comprehensive accounting Ms. Carr sold the same property to others for $110,000.00. At a hearing on a rule to pay her attorney's fees, appellee testified that she and Ms. Carr were in business together, on an equal basis, doing business as Carr & Crain Investments. From the time of her husband's death, appellee utilized the services of several lawyers, including Ms. Carr and Mr. Bishop who represented her at the May 19, 1982 hearing.
C.C.P. art. 3191, setting out duties of succession representatives, states, in part, as follows:
"A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act."
C.C.P. art. 3223 provides as follows:
"When it appears to the best interest of the succession, and subject to the representative's primary duty to preserve the estate for prompt distribution and to the terms of the testament, if any, the *782 court may authorize a succession representative to invest the funds of the succession and make them productive.
"Unless the testator has provided otherwise, such investments shall be restricted to the kinds of investments permitted to trustees by the laws of this state."
The Louisiana Trust Code, being R.S. 9:1721 et seq., under Sub-Part "C", Powers of The Trustee, states in section 2127, the "prudent man investment rule", in pertinent part, as follows:
"... [I]n investing, ..., exchanging, retaining, selling, and managing trust property a trustee shall exercise such skill and care as a man of ordinary prudence, discretion, and intelligence would exercise in the management of his own affairs, not in regard to speculation but in regard to the permanent disposition of his funds, considering the probable income as well as the probable safety of his capital..."
The Trust Code, under Sub-Part "B", Duties of the Trustee, states in sections 2084 and 2090, in pertinent part, as follows:
Section 2084
"... An individual trustee shall not lend funds to himself, or to his relative, employer, employee, partner, or other business associate, [trust funds] unless the trust instrument provides otherwise."
Section 2090
"A trustee in administering a trust shall exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property."
As late as the May 19, 1982 hearing appellee testified the corporations owed the succession an indeterminate amount of money, stated in her brief to be approximately $27,000, and appellee did not know whether the corporations then had the ability to repay the succession in whole or in part.
The lower court approved, retroactively, the loans or advances appellee made to the corporations, finding that "the amounts loaned to these corporations were used for the benefit of this succession and are properly in this succession accounting". That finding is not supported by the record. Furthermore, the loans or advances were made in violation of C.C.P. arts. 3191 and 3223 and R.S. 9:2084, 2090, and 2127, the Trust Code sections adopted by reference and made applicable to succession representatives by the second unnumbered paragraph of C.C.P. art. 3223. The funds were not invested as required by the "prudent [person] investment rule"; no interest was earned by the loans or advances; no mortgage or other security was given the succession and the funds were at risk because if the corporations to which the funds had been lent had become insolvent they would have been lost to the succession.

PENALTY AND INTEREST ON FEDERAL ESTATE TAXES
The District Court, in its Written Reasons for Judgment on the Rule to Homologate Accountings, issued November 30, 1982, stated as follows:
"... [T]he opposition correctly points out that executrix fees, interest on federal estate taxes and 1980 income taxes, which are shown on the accounting as cash disbursements to be paid, should have been presented to this Court in a tableau of distribution. However, as of the date of the hearing on these oppositions, [May 19, 1982] these amounts had been paid, albeit without court authority. The opposition does not dispute the amount of these items paid. These items appear to be valid debts of the succession." (Brackets supplied).
The issue of the propriety of homologating the accounting as to the penalty and interest for the late filing of the Federal Estate Tax return and payment of the tax was before us in Succession of Crain, 450 So.2d 1374 (La.App. 1st Cir.1984). In affirming the judgment holding the succession responsible for the estate tax penalties and interest, we reasoned, in part, that: "We have carefully reviewed the record and agree with [the trial court's] conclusion *783 that Mrs. Crain personally should not be assessed with the penalties and interest." 450 So.2d at 1377. (Brackets supplied). Our judgment in the reported decision has become final and the matter of penalty and interest on federal taxes is res judicata. C.C. art. 2286, redesignated R.S. 13:4321 by Act 331 of 1984; Hancock v. Lincoln American Life Insurance Co., 278 So.2d 561, 564 (La.App. 1st Cir.1973), writ denied 281 So.2d 754 (La.1973).

USUFRUCT, ACCEPTANCE AND LIABILITIES
In the decision reported at 450 So.2d 1374 we held that: "Since appellee [testamentary executrix] is a usufructuary, and, as such, is entitled to the fruits of the property, she must assume those liabilities resulting from the usufruct. Therefore, we find appellee responsible for the costs of the `ordinary repair' items." Id., at 1376. We then listed the "ordinary repairs" which appellee, as usufructuary, was responsible for and modified the May 2, 1983 Judgment on Rule for Payment of Repairs to Widow's Home to reflect that holding. We also found "appellee responsible for the expenditures for maintenance of the family home, as outlined in the trial court's `Judgment on Rule Seeking Repair and Preservation Expense on Widow's Home'" which was signed February 9, 1983.
Appellee strenuously urges in brief in the present appeal that "While she may have a right to her usufruct without making demand because she is executrix, she derives no independent benefits as usufructuary, has not asked for possession of her usufruct, and therefore, does not possess her usufruct." Apparently appellee did not understand our emphatic holding "that appellee is in possession of the family home as a usufructuary". 450 So.2d at 1376.
Appellee's usufruct is legal, as distinguished from testamentary, and it is therefore not necessary that she obtain a Judgment of Possession in order to possess the usufruct of the family home. The record as a whole establishes that appellee has tacitly accepted the legal usufruct to the extent such usufruct is provided for by law. Bradley v. Union National Life Insurance Company, 359 So.2d 663, 665 (La. App. 1st Cir.1978). The law which provides for appellee's legal usufruct is C.C. art. 916.1, which has been redesignated and modified by later legislation. Appellee has no legal usufruct of any succession property other than decedent's one-half interest in the family home, the provision of the decedent's Last Will to the contrary notwithstanding. The Last Will did nothing more than "confirm the usufruct which ... Sharon enjoys under the law to my interest in the community property ...". That language is not a bequest of a testamentary usufruct. Succession of Waldron, 323 So.2d 434, 436, 438 (La.1975). It confirmed the "legal usufruct" of the family home but not as to any other property decedent owned and bequeathed to his forced heirs. We note in passing that C.C.P. art. 3372 can be utilized by legatees to be sent into possession of all or part of their respective legacies, at any time before the final tableau of distribution is homologated, simply by complying with C.C.P. arts. 3031 through 3035, which proceeding must be conducted contradictorily with the testamentary executrix. Federal estate tax plus penalty and interest thereon has already been paid. We are not concerned in this appeal with the potential right of the forced heirs to seek a reduction of the bequest of the disposable portion, coupled with the usufruct on a part of the forced portion, to wit, the family home, as an impingement on the legitime. Thus, we pretermit the issue whether the Legislature may modify the general mandate of the law that forced heirs inherit their legitime in full ownership without being burdened by a legal usufruct in favor of a surviving spouse, not the parent of the forced heirs, who has been bequeathed in full ownership the disposable portion of testator's estate.
Our holding in Succession of Crain, 450 So.2d 1374 (La.App. 1st Cir.1984) is reaffirmed insofar as it holds appellee to be *784 the legal usufructuary of the family home and held her responsible, as usufructuary, for the maintenance expenses, mortgage payments, and other items of expense listed or alluded to in that decision.

INTEREST ON LOAN TO PAY INCOME TAXES
Although appellee did not obtain court authority before borrowing the funds to pay additional income tax liability attributable to the tax year 1977, the record supports the District Court's homologating that item of expense in the accounting. Appellee's testimony establishes that the tax liability was paid with funds borrowed without court authority but reflected in the comprehensive accounting as a succession expense.
The judgment homologating the comprehensive accounting approved, as a charge against the succession, the entire interest payment on the loans secured by mortgages on the "Dupre land", the second, or unauthorized loan having been made after decedent's death to pay income taxes owed by the community of acquets and gains. Only one-half of the interest payment can be charged against the succession. Thus the judgment will be modified accordingly. Likewise, the principal of the loans is allocated one-half to the succession and onehalf to appellee as an owner in indivision and the judgment will accordingly be modified.

PROPERTY TAX
The ad valorem property taxes on the family residence occupied by appellee as usufructuary are an obligation of the usufructuary, not the succession, and the judgment homologating the accounting will to that extent also be modified. C.C. art. 584.

DECREE
For the foregoing reasons the Trial Court judgment maintaining opposition to homologation of the accounting covering the period August 13, 1977 through March 17, 1981 is affirmed in the following particulars:
I. Executrix fees in the amount of $9,231.34 as being premature;
II. Advance of the sum of $833.67 allegedly paid on behalf of appellant-opponent as partial payment of her forced portion;
III. Airplane expenses in the amount of $3,488.05 and miscellaneous expenses are reduced from $1,203.25 to $1,117.58;
The Trial Court judgment dismissing the opposition to homologation of the accounting covering the period August 13, 1977 through March 17, 1981 is reversed and the opposition is maintained, in the following particulars:
IV. Mortgage payments, both principal and interest, on the family home, are the responsibility of Sharon Haas Crain, as usufructuary, and are disallowed as an obligation of the succession;
V. Family home maintenance expenses totaling $10,770.59 constitute an obligation of appellee-usufructuary;
VI. Family home ad valorem property taxes of $256.95 constitute an obligation of appellee-usufructuary;
VII. Appellee is personally charged with: (a) one-half of the loans, both principal and interest, secured by mortgage on the "Dupree land", and (b) one-half of the 1977 calendar year federal and state income joint tax liability of decedent and appellee; the succession is charged with the other one-half of each item enumerated in this paragraph;
VIII. The advances or loans of succession funds made by appellee to Crain and Haas, Inc. and Land Ho, Inc.;
It is ordered that the opposition is maintained as to any other item contained in the accountings identified in one or more of the oppositions to the several accountings to the extent such item or items are inconsistent or at variance with the views expressed herein.
To the extent that items not opposed by appellant in the six accountings filed by appellee are not inconsistent or at variance *785 with the views expressed herein and our decree, the oppositions are dismissed.
One-half of the costs of these proceedings in opposition to the accountings, including the comprehensive accounting, both in the District Court and this court, are assessed against appellee-testamentary executrix, Sharon Haas Crain, personally. The succession is cast for the other half of costs. C.C.P. art. 2164.
REVERSED IN PART, AFFIRMED IN PART, AND AMENDED IN PART.