488 So.2d 1038 (1986)
Eugene L. HILLIARD, Plaintiff-Appellee,
v.
Henry YARBROUGH, Jr., Defendant-Appellant.
No. 17705-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1986.
*1039 Rountree, Cox & Guin by Gordon E. Rountree, Shreveport, for defendant-appellant.
Miller, Dawson & Askew by James H. Askew, Shreveport, for plaintiff-appellee.
Before MARVIN, FRED W. JONES, Jr., and LINDSAY, JJ.
MARVIN, Judge.
From a judgment in favor of Amy Yarbrough's stepfather, Eugene Hilliard, for one-half of the expenses of her wedding reception ($2,563.21) in 1982, Amy's father, Henry Yarbrough, appeals. Finding that Hilliard did not meet the legal burden of proof required by C.C. Art. 1846, we reverse.

FACTS
Mrs. Hilliard, once married to Henry Yarbrough and the mother of Yarbrough's four daughters, divorced Yarbrough in 1974 and married Eugene Hilliard shortly afterward. In 1980 the older Yarbrough daughter, Leah, married. Leah's mother and father, with their respective second spouses, met and consulted about the guest list, the details of the arrangements, and the expenses of the wedding. The expense of some of the arrangements that Yarbrough did not agree to share were paid for either by Mrs. Hilliard (e.g., Sportran transportation costs) or by her parents (e.g., the cost of a band for the reception which was held at a Shreveport country club). Yarbrough paid $2,500 or approximately one-half the expenses he apparently approved beforehand. The litigants agree that the relationship between the two sets of parents became increasingly strained as a result of the joint planning of Leah's wedding in 1980.
Mrs. Hilliard acknowledged that when the arrangements for Amy's wedding were being made in 1982 she did not attempt to discuss with Yarbrough any details of the wedding or how the expenses were to be covered. Yarbrough's repeated efforts to interject himself into the planning of the details of Amy's wedding were either spurned or ignored by Mrs. Hilliard. After the wedding took place Mrs. Hilliard mailed Yarbrough a list of all expenses of the wedding totaling over $11,000. Mrs. Hilliard acknowledged that she made the arrangements and never sought or allowed Yarbrough's approval. Amy's wedding occurred May 22, 1982. About June 19, 1982, Mrs. Hilliard mailed the list of the expenses to Yarbrough. This list included the cost of the wedding reception ($5,126.41) that was held at the Shreveport Club which was billed to and paid for by Eugene Hilliard. Both Hilliard and Yarbrough are members of the Shreveport Club.
Yarbrough, reasoning that he should contribute $500 more than he had contributed to the cost of Leah's wedding two years before, mailed Mrs. Hilliard his personal check for $3,000 dated June 30, 1982, which Mrs. Hilliard deposited in her bank account. Yarbrough explained that he thought *1040 $3,000 was a sufficient contribution additionally because he had "no say" as to the expenses of Amy's wedding.
Yarbrough admitted receiving two telephone calls from Mr. Hilliard, one in November 1982 and the other in mid-January 1984, about the cost of Amy's wedding reception at the Shreveport Club, but emphatically denies that he agreed in any respect to pay any amounts to Hilliard or to anyone to help defray such expense.
Hilliard testified that he learned from his wife in early 1982 that the country club where Leah's wedding reception was held was not available for Amy's wedding reception on May 22 and suggested that Mrs. Hilliard might have the reception at the Shreveport Club instead. He said that he telephoned Yarbrough in February about paying one-half the cost of the reception. He said that Yarbrough agreed, "if it was not going to be too expensive." Hilliard testified that he would not have allowed the Shreveport Club to charge his account for the reception without Yarbrough's agreement to pay one-half of the cost.
Hilliard said he again telephoned Yarbrough in December 1982, in May 1983, and in January 1984 and that he wrote Yarbrough in 1982 and in 1983 about the wedding reception cost.
Photocopies of the writings Hilliard said he mailed to Yarbrough in December 1982 and in November 1983 were introduced. The December 1982 note shows a copy of the Shreveport Club's charges to Hilliard's membership above Hilliard's handwriting:
Henry, These are the $5,125.41 charges for Amy's reception. I paid this and have not been reimbursed for it.
 Thank you
 Gene
The November 1983 note reads
Henry, I still haven't heard from you on this and I certainly expect to and I think enough time has passed. Please let me have your check for $2563.20.
 Gene
Hilliard and Yarbrough generally agree that when Hilliard telephoned Yarbrough in January 1984 Yarbrough effectively told Hilliard that he had seen the Shreveport Club bills, that he didn't owe Hilliard or the Shreveport Club, and that he did not wish to be bothered further. Hilliard then brought suit on April 26, 1984.

THE BURDEN OF PROOF
Believing Hilliard's version, the trial court found that the conversation "as described by plaintiff" took place prior to Amy's wedding. With this finding of fact, the trial court's judgment would have been correct if the obligation sued on were $500 or less. CC Art. 1846. Such an obligation may be proved by "competent evidence."
An oral contract in excess of $500, however, must be proved by at least one witness and "other corroborating circumstances." CC Art. 1846, not changing the rule of former CC Art. 2277. Although a plaintiff may serve as the witness, other corroborating circumstances must be proved. The corroborating circumstances may be "general" and need not prove every detail of plaintiff's case. Bordlee v. Pat's Construction Company, Inc., 316 So.2d 16 (La.App. 4th Cir.1975); Miller v. Harvey, 408 So.2d 946 (La.App. 2d Cir.1981). The critical issue is whether the "other circumstances" revealed in this record corroborate Hilliard.
Mrs. Hilliard does not corroborate generally or specifically the existence of the obligation. She testified that although the two couples communicated before and during Leah's wedding, there were problems which finally reached the point where they were not communicating at all. Mrs. Hilliard, desiring to avoid more conflict, took it upon herself to plan Amy's wedding, ignoring Yarbrough's attempts to involve himself in the planning. Mr. and Mrs. Hilliard had already scheduled the reception for May 22 at the Shreveport Club before Hilliard telephoned Yarbrough the first time. Mrs. Hilliard made the specific arrangements for food and drink at the Shreveport Club with the club's manager and told Mr. Hilliard of the arrangements. *1041 Mrs. Hilliard said that Mr. Hilliard agreed to the arrangements, telling her that he had spoken to Yarbrough. She did not know, however, why Hilliard would have telephoned Yarbrough and did not request that he telephone Yarbrough about anything because she made the decision not to involve Yarbrough in the details of the wedding plans.
Hilliard also contends that Yarbrough's silence following his receipt of the wedding reception bills from Hilliard is a corroborating circumstance because this silence was "unnatural." Rooker v. Checker Cab Company of New Orleans, Inc., 145 So.2d 631 (La.App. 4th Cir.1962). Because of the strained relationship between the parties, silence on the part of Yarbrough is more natural than unnatural and does not corroborate Hilliard's version. Hilliard's 1982 writing (on the photocopy of the Shreveport Club's charges to Hilliard) seeks reimbursement, mentioning only the $5,125.51 charges, without limiting the reimbursement to one-half of that amount. Additionally Yarbrough had reviewed a copy of the Shreveport Club bill which was contained in the list of all costs that Mrs. Hilliard had sent him on June 19, 1982, and he had mailed to her the $3,000 check on June 30. Hilliard knew of his wife's receipt of the check. About five months later, Hilliard said he began mailing bills which he claims Yarbrough "ignored" and sat silent. Under these circumstances, the silence was more natural than "unnatural" and does not corroborate Hilliard's version.
Hilliard also argues that his sending a copy of the bills to Yarbrough corroborates the existence of the obligation because it would be illogical for him to send the bills to one who was not obligated. Again, we do not agree. In Ville Platte Concrete v. Western Cas. & Sur., 377 So.2d 532 (La. App. 3d Cir.1979), plaintiff sought to enforce an oral contract over $500 against the parish police jury. Notwithstanding that the secretary of plaintiff's attorney testified that she mailed plaintiff's invoices and liens to the police jury and introduced copies of certified mail return receipts from the police jury, the court held that plaintiff's version of the oral contract was uncorroborated as then required by Art. 2277 (now revised CC Art. 1846).
In Continental Cas. v. Prof. Trim & Upholstery, 398 So.2d 1190 (La.App.2d Cir.1981), plaintiff was attempting to establish a contract of deposit which exceeded $500. Plaintiff stated that its insured delivered the property to defendant, which, through defendant's lack of due care, was later stolen. Plaintiff's evidence consisted of testimony of its insured to establish the contract, and testimony of the police officer who investigated the reported theft. Affirming the trial court, this court held that the testimony of the police officer did not constitute "other corroborating circumstances" as required by the code to prove a debt of over $500.
In Moise v. Moise, 4 Orl.App. 184 (La. App.1907), plaintiff contended that defendant verbally agreed to build plaintiff's house for the sum of $3,000. Defendant said that he only agreed to draw the specifications for the house and denied any agreement to build plaintiff's house. The trial court accepted plaintiff's version. The appellate court reversed, however, and held that plaintiff's testimony, unaccompanied by corroborating circumstances, did not satisfy the burden of proof to uphold the existence of a verbal contract over $500. See also Gray v. Feazel, 3 La.App. 142 (2d Cir.1925); Brady v. McWilliams, 19 La. Ann. 433 (1867).
The trial court had the prerogative of believing Hilliard and not Yarbrough. Were the obligation $500 or less, we would affirm. The law requires, however, that verbal obligations in excess of $500 be proved also by other corroborating circumstances, a higher and more significant burden on a plaintiff. Neither the conduct nor the words of Mrs. Hilliard or Yarbrough after the wedding nor the silence of Yarbrough or the mailing of the bill to Yarbrough constitutes the proof of the required *1042 corroborating circumstances by a preponderance of the evidence.
CC Art. 1846 and its immediate predecessor, former Art. 2277, derive from Art. 2257 of the Civil Code of 1825. The latter article was a revision of Art. 243 of the Civil Code of 1808. See also Art. 1341 of the Code Napoleon of 1804. See West's LSA-CC Art. 2277, Vol. 8, History & Text of Former Codes, p. 598. The commentators offer little explanation of the distinction in the burden of proof. Planiol, Treatise on The Civil Law, Volume 2, Part 1, No. 1103, et seq. Nonetheless, the Code has consistently imposed a greater burden of proof on a plaintiff who seeks to enforce a verbal obligation above $500 than one of $500 or less.
In Comier v. LeBlanc, 8 Mart. (N.S.) 457 (1830), plaintiff said that defendant verbally agreed to pay a $600 promissory note and thereafter made a partial payment and "inserted" a receipt on the back of the note. Defendant said he paid the partial payment, but as agent for the maker and not in discharge of any debt of his own. The trial court believed and accepted plaintiff's version. The supreme court reversed, citing Art. 2257 of the Civil Code of 1825, and saying
The code requires for proof of a contract for the payment of a greater sum than 500 dollars, the testimony of one credible witness, and other corroborating circumstances. Now the circumstance relied on, is found in the testimony of the single witness. This we think does not suffice; the corroborating circumstances the code requires, are not those stated by the single witness in his testimony, but those that appear aliunde. Ibid. at p. 458. Emphasis supplied.
For the reasons assigned, we must find this plaintiff, however believable, has not proved his case by other corroborating circumstances aliunde as required by CC Art. 1846. Cormier, supra.
At appellee's cost, judgment is REVERSED.