660 So.2d 182 (1995)
Dr. Arnold KILPATRICK, Plaintiff-Appellee,
v.
Travis H. KILPATRICK, Defendant-Appellant.
No. 27,241-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1995.
Rehearing Denied September 21, 1995.
*183 Kneipp & Hastings by Donald L. Kneipp, Monroe, for appellant.
Bobby L. Culpepper, Jonesboro, for appellee.
Before SEXTON, NORRIS and WILLIAMS, JJ.
NORRIS, Judge.
Travis Kilpatrick appeals a trial court judgment awarding $47,667 under an oral contract to his brother, Dr. Arnold Kilpatrick. For the following reasons, we reverse and render.

*184 Facts

The oral contract at issue stemmed from litigation expenses Arnold incurred as co-executor of their brother Willard's estate after Willard's death in February 1977. Although Arnold alleged that litigation over Willard's succession was complex and expensive, the details are treated only tangentially in the instant record.[1] For purposes of this opinion, it is sufficient to say that after an adverse judgment in May 1980, which effectively denied Arnold, Travis and their niece, Lois Dennis, any share of Willard's estate, Arnold contends he phoned Travis to propose a plan to pursue the litigation. Arnold claims he told Travis, "I will finance it. If we lose I will finance our portion of it, but if we win I expect to be paid," and Travis agreed. According to Arnold, he also proposed this separately to Lois Dennis, the only other heir, and she agreed.
Arnold testified that in 1980 he borrowed a total of $170,000 from numerous banks to cover the costs of litigating the will contest. Arnold used the money to hire several attorneys for the Kilpatrick side; apparently Mrs. Willard Kilpatrick's brother, Harper Terrill, the other co-executor, hired separate counsel to protect the Terrill family's interests. Arnold testified that he formed K & K Executive Corporation solely to fund the expenses of litigation. He testified that most of the loans were made in the name of K & K Executive Corporation; however, Arnold stated he paid the principal and interest (record also shows personal checks to attorneys) from his personal checking account, and could not recall whether K & K even had a checking account.
Kilpatrick and Terrill eventually obtained a final judgment recognizing both family's inheritance rights. In August 1984, the first succession disbursement was made, and each heir, including Arnold, received $139,000. In addition, Arnold received from the estate an executor's fee of $49,000, reimbursement for expert fees of $5,000 and $3,989.70, and the principal amount of his loans, $170,000. Arnold used this money to pay off the principal and accumulated interest on the loans. Soon thereafter, Sam Donald, who had been Willard's certified public accountant and now handled matters for his estate, prepared an expense sheet for Arnold showing the total amount he borrowed and paid in connection with the litigation (including reimbursements), and the share of interest allegedly owed by each Kilpatrick heir.[2] A few months later, Arnold, accompanied by his son, presented the expense sheet to Travis and his wife at their home. Mrs. Travis Kilpatrick testified this occurred on December 4, 1984. At this time, Travis denied owing Arnold any money.
Arnold listed the claim against Travis when he was forced to file for bankruptcy in 1986. According to Arnold, by this time his niece, Lois Dennis, had already paid him her pro rata share of the interest on the loans. Another disbursement of estate funds was made in December 1989. Arnold testified that after the proposed sale of certain succession property, Travis would have received about $320,000 total. Travis admitted he had not paid Arnold for any expenses connected with the will contest.
Arnold testified that he kept Travis informed of the case status at all times. Travis conceded that he was aware of the legal *185 proceedings involving his brother's estate (he made at least one court appearance and gave one deposition), but flatly denied ever agreeing to let Arnold advance the litigation expenses and to reimburse him one-third if they ultimately won. His wife claimed at trial that she listened to every one of Travis's phone conversations because of his trouble hearing, and never heard such an agreement. Travis also testified that had Arnold consulted him, he might have agreed to pay a reasonable amount; he did not, however, consider $47,667 reasonable.
In January 1992, Arnold made formal written demand through an attorney upon Travis. Finally, in May 1993 he filed this suit to collect from Travis one-third of the interest Arnold paid on the loans. Travis denied all allegations that an oral contract existed and filed an exception of prescription with his answer.
The trial court awarded Arnold $47,667, finding sufficient proof of an oral agreement. The court believed Arnold's testimony over Travis's as to the existence of the contract. It also considered, as evidence to support Arnold's claim, a copy of the expense sheet prepared by Sam Donald itemizing Arnold's payments to various attorneys and banks, and copies of some cancelled checks to banks purportedly for repayment of principal and interest on loans. The court concluded, "The defendant has benefitted financially from the litigation far in excess of its cost and now refuses to pay his share of the costs. This Court will not allow the defendant to escape a true and just indebtedness to the plaintiff." R.pp. 39-40. The court did not mention Travis's exception of prescription, thus implicitly rejecting it.
On appeal, Travis contends the trial court erred in finding a valid oral contract existed and sufficient proof of the amount owed, in denying his exception of prescription, in admitting Arnold's expense sheet into evidence without a proper foundation, and in allowing evidence of money borrowed by and allegedly due K & K Executive Corporation, a non-party.

Discussion
The party asserting an obligation must prove it by a preponderance of the evidence. La.C.C. art. 1831. An oral contract over $500 must be proved by at least one credible witness and other corroborating circumstances. La.C.C. art. 1846. The plaintiff may be the one credible witness. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Richard v. Comeaux, 626 So.2d 507 (La.App. 3d Cir.1993), writ denied, 93-2989 (1/28/94), 630 So.2d 800. "Other corroborating circumstances" need only be general in nature; independent proof of every detail of the agreement is not required. Samuels v. Firestone Tire & Rubber Co., supra; Miller v. Harvey, 408 So.2d 946 (La.App. 2d Cir.1981). This proof may not, however, result from the plaintiff's own actions. Woodard v. Felts, 573 So.2d 1312 (La.App. 2d Cir.1991) (forester's markings on trees not corroborating evidence of an oral agreement with the landowner to market timber); Wisinger v. Casten, 550 So.2d 685 (La.App. 2d Cir.1989) (electrician's new, higher bid proposal and its approval by insurance adjuster did not modify original bid proposal agreed to by restaurant owner); Hilliard v. Yarbrough, 488 So.2d 1038 (La. App. 2d Cir.1986) (sending a copy of the wedding reception bills to defendant not a corroborating circumstance). A trial court's factual findings, including its determination as to corroboration, are entitled to great weight and will not be reversed absent manifest or clear error. Samuels v. Firestone Tire & Rubber Co., supra; Rosell v. ESCO, 549 So.2d 840 (La.1989); Lee Eyster & Asso. Inc. v. Favor, 504 So.2d 580 (La.App. 4th Cir.), writ denied, 507 So.2d 232 (1987).
Arnold's testimony sufficed as the one credible witness. The sole issue is therefore whether he supplied the requisite "corroborating circumstances" required by C.C. art. 1846.
The trial court found that Sam Donald's accounting compilation and the copies of cancelled checks to various banks showing repayment of principal and interest corroborated Arnold's claim that a contract existed. Because Arnold produced no witness to the agreement, the only evidence that can possibly *186 serve to corroborate his testimony is exhibit P-1, the expense sheet, and in globo exhibit P-2, the documents which partially supported the expense sheet. For the following reasons, however, we find the evidence insufficient to corroborate the alleged oral contract.
First, the compilation resulted solely from Arnold's own actions; he not only directed Sam Arnold to prepare the accounting summary, but he admitted that he provided much of its content from memory alone. Thus, the compilation does not suffice as corroborating circumstances. Woodard v. Felts, supra. Second, although the documentation submitted is evidence that Arnold incurred a rather large personal debt to finance the will contest, it in no way corroborates that Travis agreed to reimburse Arnold for a portion of this debt. The mere fact that Arnold had an expense sheet prepared and presented it to Travis for payment does not prove an oral agreement for partial reimbursement. Hilliard v. Yarbrough, supra. On this record we are constrained to find that Arnold has produced nothing besides his own self-serving testimony to prove the oral agreement occurred.
As noted in Hilliard, proof of an oral agreement over $500 must meet the higher standard of including corroborating circumstances in addition to the plaintiff's testimony. Thus regardless of Arnold's credibility, he has failed to show corroboration of even a general nature in the instant case. Therefore we must find that the trial court was clearly wrong to conclude that Arnold met his burden of proving the existence of an oral contract under C.C. art. 1846. Hilliard v. Yarbrough, supra.
Nevertheless, we shall examine whether Arnold may be entitled to some type of quasi contractual remedy. La.C.C. art. 2294. Actions sounding in quasi contract are subject to the 10-year liberative prescription for personal actions. La.C.C. art. 3499; Minyard v. Curtis Products Inc., 251 La. 624, 205 So.2d 422 (1967); Taylor v. Smith, 619 So.2d 881 (La.App. 3d Cir.), writ denied, 625 So.2d 1038 (1993). Arnold's cause of action did not arise until he was compelled to discharge the obligation, or repay the loans, in 1984. Minyard, supra. The instant suit, filed in 1993, is timely.
Contrary to Travis's assertion that Arnold failed to plead an alternative equitable remedy in his petition, we find the petition supports a plea for recovery under quasi-contract. Arnold's petition contains a prayer for "all necessary orders and decrees and for just and equitable relief." In any event, because the facts alleged were sufficient to give Travis fair notice of the remedy sought, no special pleading was required. Kibbe v. Lege, 604 So.2d 1366 (La.App. 3d Cir.), writs denied, 606 So.2d 540, 541 (1992); Terral v. Bearden, 338 So.2d 141 (La.App.2d Cir.1976). Additionally, La.C.C.P. art. 862 gives the court authority to allow relief to which he is entitled "even if the party has not demanded such relief in his pleadings and the latter contained no prayer for general and equitable relief." See Kibbe, supra.
Arnold urges he is entitled to recover under the doctrine of unjust enrichment. The principal behind unjust enrichment is that the plaintiff suffered an economic detriment for which he should not be responsible, while the defendant received an economic benefit for which he has not paid. La.C.C. art. 2055; Belgard v. Collins, 628 So.2d 1254 (La.App. 3d Cir.1993); Harper v. Kennedy, 561 So.2d 830 (La.App. 2d Cir. 1990). To support an action for unjust enrichment, a plaintiff must show: (1) an enrichment; (2) an impoverishment; (3) a causal connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment or impoverishment; and (5) no other remedy at law. Minyard, supra; Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116 (La.1974).
The first three interrelated elements are satisfied. Travis received the economic benefit of Arnold's borrowing money to litigate the succession and ultimately winning for Travis a portion of the inheritance. Travis candidly admitted he did not reimburse Arnold directly for his efforts, without which he may well have received nothing. Clearly, the enrichment and impoverishment are causally related. However, we cannot apply *187 unjust enrichment because the impoverishment was preventable, and Arnold had another remedy at law.
Absence of justification or cause, in practical terms, means that "no legal cause justifies the enrichment (in the sense that no lawful contract or provision of law was intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment)." "No other remedy at law results when no other legal remedy is practically available to the impoverished plaintiff by which the impoverishment might be or might reasonably have been avoided." Tate, The Louisiana Action for Unjustified Enrichment, 50 Tul. L.Rev. 883 (1976) and 51 Tul.L.Rev. 446 (1977) (emphasis added). Arnold claims that Travis was unjustly enriched by receiving the full amount of his inheritance while not contributing his full share toward the legal expenses incurred. Arnold, however, testified that he voluntarily chose to seek (and did in fact obtain) reimbursement from the estate for only the principal loan amount and not the interest he paid.[3] Nevertheless, the entire sum, including the interest, was properly chargeable to Willard's succession as expenses Arnold incurred as co-executor in litigating the will, providing those expenses were reasonable. La.C.C.P. arts. 3191, 3221, 3241; See Succession of Harvey, 616 So.2d 1281 (La.App. 4th Cir.1993); Atkins v. Roberts, 561 So.2d 837 (La.App. 2d Cir.1990); Succession of Crain, 468 So.2d 778 (La.App. 1st Cir.), writ denied, 472 So.2d 30 (1985). Arnold failed to take advantage of a readily available legal remedy specifically intended to prevent heirs from assuming personal liability for such expenses. Had he done so, Arnold could have avoided the resulting enrichment and impoverishment. Having failed to avail himself of this legal remedy, Arnold cannot now resort to unjust enrichment to rectify his error. See McPhearson v. Shell Oil Co., 584 So.2d 373 (La.App. 4th Cir.1991); Newt Brown, Contractor, Inc. v. Michael Builders, Inc., 569 So.2d 288 (La. App. 2d Cir.1990), writ denied, 572 So.2d 91 (1991).
Though not addressed by either party in brief, we have also considered the doctrine of negotiorum gestio as a possible form of recovery. This quasi-contact is formed when the gestor voluntarily undertakes to manage another's affairs. La.C.C. art. 2295 (emphasis added). The gestor must act for the other's benefit, not his own. Illinois Cent. Gulf R. Co. v. Deaton, Inc., 581 So.2d 714 (La.App. 4th Cir.1991). Arnold has neither alleged nor shown on this record that he voluntarily undertook to manage Travis's affairs. Kirkpatrick v. Young, 456 So.2d 622 (La.1984). Consequently, we must assume that, as co-executor, Arnold was merely fulfilling his legal duty to defend the validity of the will. Atkins v. Roberts, supra; Succession of Kite, 366 So.2d 602 (La.App. 3d Cir. 1978), writ denied, 369 So.2d 155 (1979); Succession of Bradford, 130 So.2d 702 (La.App. 2d Cir.1961). Management of another's affairs pursuant to a legal duty does not give rise to an action under negotiorum gestio. Comment, Management of The Affairs of Another, 36 Tulane L.Rev. 108 (1961). From this record, it also appears that Arnold pursued the litigation to protect his own succession rights, while incidentally conferring a benefit upon Lois and Travis as well; Arnold did not testify to any other motive. Thus, the principles of negotiorum gestio do not apply in the instant case.

Conclusion
For the foregoing reasons, the judgment of the trial court in favor of Arnold Kilpatrick and against Travis Kilpatrick is reversed. *188 Judgment is rendered dismissing Arnold Kilpatrick's claim. Costs of trial and appeal are assessed to Arnold Kilpatrick.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, NORRIS and WILLIAMS, JJ., and PRICE, J. Pro Tem.
Rehearing denied.
NOTES
[1] The facts are related in Succession of Kilpatrick, 422 So.2d 464 (La.App. 2d Cir.1982), writ denied 429 So.2d 126 (1983). While on his deathbed, Willard, who had amassed a large fortune, revoked a prior will which had named First National Bank of Shreveport as co-executor of the estate and trustee of a testamentary educational foundation. Willard's new will left his entire estate to his wife, Katherine, and named as co-executors Arnold and Katherine's brother, Harper Terrill. Katherine likewise executed a new will, revoking an earlier one which had left much of her property to FNB, and instead left it one-half to her own heirs and one-half to Willard's heirs. Litigation ensued, primarily in State court, between FNB and Katherine. There was also Federal litigation. See Travelers Ins. Co. v. First Nat'l Bank of Shreveport, 675 F.2d 633 (5th Cir.1982). Katherine died in March 1979. Arnold's legal efforts were directed primarily to prove the validity of Willard's second will.
[2] Because he had recovered the principal amount paid on the loans from the estate, Arnold sought from Lois and Travis only one-third of the interest he paid. Arnold admitted that he did not attempt to recover the interest from the estate.
[3] The following colloquy occurred:

Q. Did you at any time attempt to have the succession reimburse you this interest that you're now trying to seek from Travis Kilpatrick?
A. No, I did not.
Q. Is there a reason for that?
A. I didn't feel like that was part of the estate's part. I felt like it was our part, the Kilpatrick side of the estate's expenses.
Q. All right. So, you didn't consider it expense of the estate then to include the interest that you ... that would have accrued on those loans that you borrowed? Is that correct? Is that the reason you did not seek to get reimbursement from the succession?
A. I hadn't even thought about it from that standpoint. I thought it was owed by the Kilpatrick side.
R.p. 74.