WILLIAMS, J.
liThe plaintiff, James H. Dortch, appeals a trial court’s judgment, dismissing his revocatory action.^ For the following reasons, we affirm.
FACTS
The plaintiff, James H. Dortch, is the son-in-law of defendant, Ben J. Rollins. In 2004, Dortch .and Rollins jointly purchased a horse. . Although the horse was pur *913 chased by Dortch and Rollins, it was titled solely in the name of Rolling Hills Farms of West Monroe, Inc. (“Rolling Hills Farms”). This corporation was owned by Ben Rollins and his wife, Sheila Rollins.[1]
In October 2007, Rolling Hills Farms sold the horse. Following the sale, a dispute arose between the plaintiff and the defendant when Rollins attempted to pay $18,751.41 for Dortch’s share of the ownership interest in the horse. Dortch refused to accept the payment, insisting that he was entitled to more of .the proceeds from the sale.
On September 4, 2008, Dortch filed a lawsuit against Rollins. Dortch . later amended the lawsuit to add Rolling Hills Farms as a defendant. On March 8, 2010, after a bench trial, the trial court found in favor of Dortch and entered a judgment against Rolling Hills Farms in the amount of $31,131, “pius legal interest, plus all costs of these proceedings from September 4, 2008, until paid in full.”
On June 24, 2010, a judgment debtor examination was conducted. During the examination, Dortch discovered that Rollins, as president of Rolling Hills Farms, had executed a quitclaim deed on June 5, 2009, by | {.which he transferred virtually all of the property owned by Rolling Hills Farms to Louisiana Leasing.[2] The property consisted of certain parcels of immovable property and the improvements thereon, including two climate-controlled storage facilities and a duplex rental unit. The quitclaim deed provided that the consideration for the transfer of the property was $1,013,850. However, Louisiana Leasing did not pay any amount to Rolling Hills Farms. Instead, in exchange for the transfer, Rollins transferred to Louisiana Leasing the total amount of debt Rolling Hills Farms owed to him.
On June 16, 2011, Dortch'filed the instant revocatory action, naming Rollins, Rolling Hills Farms and Louisiana Leasing as defendants. He alleged that the transfer of the property to Louisiana Leasing had rendered Rolling Hills Farms insolvent. He sought to havé the quitclaim deed nullified and revoked. In the alternative, Dortch alleged that the sale/transfer was a simulation.
In response, the defendants filed peremptory exceptions of prescription and no cause of action. The defendants argued that Dortch did not have a cause of action against Rollins because the judgment he had obtained was against Rolling Hills Farms, and not against Rollins.. They also, argued that the petition failed to state a cause of action because the transfer of the property occurred before Rolling Hills Farms was, added as a defendant in the underlying lawsuit. The trial .court denied the exception of no cause of action.,
IsDortch filed a motion for summary judgment, which was also denied. This court granted Dortch’s writ application and affirmed, finding that a- genuine issue of material fact existed “as to whether Dortch’s revocatory action [was] prescribed[.]”' The matter was remanded to the trial court for further proceedings. Dortch v. Rollins, 47,525 (La.App.2d Cir.4/10/13), 113 So.3d 443.
On' remand, the trial court concluded that Dortch’s revocatory action had not prescribed arid heard testimony on the merits of the case. On cross-examination, *914 Rollins conceded that Rolling Hills 'Farms owed Dortch at least $18,000. Rollins further testified that he and his wife transferred all of the assets from Rolling Hills Farms to Louisiana Leasing- “to consolidate our business.” According to Rollins, his wife had become tired of the amount of work involved in maintaining “three , sets of books.” He denied transferring the assets from Rolling Hills Farms to prevent paying the judgment owed to Dortch. According to Rollins, he chose to transfer the assets because he “wanted to operate under the L.L.C. instead of the corp[oration].” He testified that the transfer was made before Dortch obtained a judgment; therefore, the decision to transfer the assets “ha[d] nothing to do with him getting paid.” Rollins further testified that he did not receive a check for the property transferred under the quitclaim deed. He explained, “[I]t was paid through transfers ... through the bookkeeping systemf.]” Additionally, Rollins testified that Rolling Hills Farms owed him approximately $1.8 million and the transfer of the property “paid part of it back, but it didn’t pay it all back.” According to Rollins, Rolling Hills LFarms still owes him “six or seven hundred thousand dollars.” Further, Rollins claimed that he did not understand how the transaction/transfer worked. He stated several times during his testimony, “I’m not a CPA; you’ll have to ask my CPA.”
On direct examination, Rollins testified that when he decided to discontinue his horse-farming operations, he sought advice from his CPA regarding the benefits of going from a corporation to a L.L.C., and vice versa. He stated that he decided to transfer the assets to the L.L.C. “for some tax purposes.” Rollins also testified that he and his wife owned the farm that housed Rolling Hills Farms. He stated that he began operating it as a horse farm in approximately 1995. He described horse farming as a “risky business” because “some years you lose money, some years you make money.” He stated that over the years, Rolling Hills Farms became indebted to him for various transactions, including the purchase of horses, trucks, trailers and equipment. Rollins testified that he and his wife sold the farm-in 2008 and he used some of his personal proceeds from the sale to satisfy debt owed by Rolling Hills Farms. Rollins testified that, because of the transfer of the property in dispute, the debt formerly owed to him by Rolling Hills Farms is now owed by Louisiana Leasing.
Gareld E. DeWitt, Jr., the CPA employed by Rollins, also testified during the trial. Under cross-examination, he testified as follows: his only involvement in the quitclaim deed/property transfer was “pro-vid[ing] some figures to the attorney that prepared it”; he used the information provided to him by Rollins to prepare the tax returns; and he had no way of knowing | ¿whether Rollins provided him with the correct information because he did not conduct an audit. When questioned with regard to the transfer of the property from Rolling Hills Farms to Louisiana Leasing without the exchange of any currency, DeWitt stated:
The property was marked up to fair market value and then at that point it’s the same as cash. Mr. Rollins was paid that amount against the debt that Rolling Hills Farms owed him. He reported a gain on his personal tax return that flowed down from that sale through the K-l from Rolling Hills Farms. Then he took property that was his and put that in ... Louisiana Leasing for other debt owed to the shareholder or member[.]
Upon further questioning, the following colloquy took place:
Q. [T]he 1.8 million dollars Rolling Hills Farms owed Mr. Rollins, was *915 that debt transferred over? Assigned, transferred in some way to Louisiana Leasing?
A. Not that specific debt, no.
Q. What has happened to that debt?
A. [R]olling Hills owed Mr. Rollins 1.8 million dollars. It had assets that were transferred into Louisiana , Leasing. The — Mr. Rollins was paid back part of his debt, part of the 1.8 million dollars.
Q. Can you explain how?
A. With the property. The mini-storage facility, the duplex and the horse.
Q. That had just gone to Louisiana Leasing? . -
A. Well, there — there’s a step in there that, uh, in the' legal documents didn’t take place.
& * *
COURT: Okay. [Ljet me back up. You said there was a step that didn’t take place in the legal documents?
1A- Correct.
COURT: Okay. Walk us through that step one more time very slowly.
A. Okay, Rolling Hills Farms owed Mr. Rollins 1.8 million dollars.
COURT: Right.
A. You had assets — It had no cash to pay that back with and it had assets of a mini-storage facility, a duplex and a horse.
COURT: Okay.
A. You cannot just transfer those out of the company based on their book value.
[[Image here]]
A. [S]o you got property that’s got a book value on the books. If you transfer that out, whether you do it as a distribution or you do as a ■ payment — re-payment of debt, it’s got to be marked up to fair market value. It has to be treated as if it was sold and then — And if we go through all this you’ll see I used 'an account called Petty Cash to .hold— to keep the audit trail, to keep the accounting trail to be able to show first the mark up- to fair market value and then that value being used to pay back the debt. So, that paid back the debt. So now Mr. Rollins has the property, Rolling Hills Farms only owes him between five and six hundred thousand, I believe, not the 1.8 million. And I’m — I’m generalizing those numbers. Then he took those three assets, he put them under Louisiana Leasing’s name and Louisiana Leasing now owes him that same amount in debt.
⅜ ⅜ ⅝
DeWitt further testified that the language contained in the quitclaim deed did not adequately describe what actually ■ occurred. He explained that Rolling Hills Farms did not sell or. convey the property to Louisiana.!7Leasing. Rather, the property was, in effect, transferred to Rollins to pay a debt. In turn, Rollins “contributed that property to a new entity for new debt.”- DeWitt further explained that the legal documents did not show in detail the process whereby the property was transferred from Rolling Hills Farms to Rollins.
On direct examination, . DeWitt testified that the accounting would not have looked any different if cash or checks had been used in the transaction, rather than the transfer of property. He stated:
If you assumed that Mr. Rollins had a million dollars that he could have loaned Louisiana Leasing, then Louisiana Leasing would have paid that money to Rolling Hills Farms to purchase the proper *916 ty, the Louisiana Leasing books would look exactly the same. You’d,have a deposit into the checking account of Rolling Hills Farms instead of my use of this petty cash holding account, and then Rolling Hills Farms would have written a check to Mr. Rollins for that amount of money and reduced his debt. So, the end result would’ve — the circle would have been the same.
[[Image here]]
And the same situation if' Louisiana Leasing would’ve gotten a loan from a bank to do the same thing. Instead of having debt on Louisiana Leasing’s books to Mr. Rollins,’ there would be a payable bank and they would use that money to complete the same transaction.
[[Image here]]
On redirect examination, DeWitt reiterated that money did not change hands during the transfer. He explained, “Louisiana Leasing picked up debt to Mr. Rollins and Rolling Hills Farms was relieved of debt to Mr. Rollins;” He also' testified that the transfer of the property to Louisiana Leasing did not cause ■ Rolling Hills Farms to become insolvent because Rolling Hills- Farms “was already insolvent before the transfer.” Further, he explained that the transfer did not increase the insolvency of Rolling Hills Farms Isbecause, by transferring the assets, Rolling Hills Farms was also able to transfer its debts to Louisiana Leasing.
After hearing the testimony and reviewing the documents, the trial court found in favor of the defendants and dismissed Dortch’s claims, stating:
[T]he Court finds that the evidence supports that the shareholder debt owed to Rollins by Rolling Hills existed before the dispute between Dortch and Rollins arose. Recall that the 2006 tax return showed a liability of over $1,700,000, whereas the sale of [the horse] which precipitated this dispute did not occur until 2007. For the ¡Court , to accept Dortch’s argument that this was a sham transaction, the Court would have to believe that Defendants somehow had a premonition that a business dispute might arise in the future and concocted this scheme to avoid a debt that would not materialize for many years. Rollins’ evasiveness and overall demeanor on the stand did cause consternation for the Court. However, going back to the elements of a revocatory action which Dortch must prove, the Court finds that Dortch failed to carry his burden to prove that the asset transfer from Rolling Hills to Louisiana Leasing caused or increased Rolling Hills’ insolvency.
[[Image here]]
Dortch appeals.
DISCUSSION
Dortch contends the trial court erred in concluding that Rolling Hills Farms owed a $1.8 million debt to Rollins. He argues that the evidence offered to prove the existence of the allegéd debt was legally insufficient under LSA-C.C. art. 1846, because Rollins relied on his memory to create tax documentation to establish the debt’s existence.
The party asserting an obligation must prove it by a preponderance of the evidence. LSA-C.C. art. 1831. An oral contract over $600 must be 19proven by at least one credible witness and other corroborating circumstances. LSA-C.C. art. 1846; Kilpatrick v. Kilpatrick, 27,241 (La.App.2d Cir.8/23/95), 660 So.2d 182, writ denied, 95-2579 (La.12/15/95), 664 So.2d 444. The plaintiff may be the one credible witness. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); Kilpatrick, supra. “Other corroborating cir *917 cumstances” need only be general in nature; independent proof of every detail of the agreement is not required. Samuels, supra; Kilpatrick, supra. However, this proof may not result from the plaintiffs own actions. Kilpatrick, supra; Woodard v. Felts, 573 So.2d 1312 (La.App. 2d Cir.1991).
During the trial, Rollins and DeWitt, his accountant, testified with regard to the debt owed to Rollins by Rolling Hills Farms. Rollins also testified that he frequently used his personal funds to benefit Rolling Hills Farms. He also stated that when he sold the 45-acre farm, which was personal property owned by him and his wife, he used the proceeds from the sale to pay debts owed by Rolling Hills Farms. Rollins further testified that he had used personal funds to purchase horses and equipment for the business. DeWitt testified that it was. customary for the owners of small, closely-held corporations to use personal funds to extend “loans” to the business.and to do so without receipts or promissory notes. As the trial court noted, the debt was listed on tax documents as early as 2006.
We find that Rollins and DeWitt sufficed as “credible” witnesses to prove the existence of the debt. We also find that DeWitt’s testimony, the tax records introduced into evidence and the nature of the horse | mbreeding/farming business* as described by Rollins, was sufficient to constitute “corroborating circumstances” as required by LSA-C.C. art. 1846. Accordingly, we find that the trial court did not err in finding that Rolling Hills Farms was indebted to Rollins in the axhount of approximately $1.8 million.
Dortch also contends the trial court erred in dismissing the revocatory action. Dortch argues that because Rollins knew Dortch would prevail in his lawsuit, Rollins intentionally “gutted” Rolling-Hills Farms so that the company would be left without a means to pay the judgment. According to Dortch, the transfer of .the property from Rolling Hills Farms to Louisiana Leasing either caused. Rolling Hills Farms to become insolvent or increased its insolvency.
A revocatory action is one where an obligee seeks to annul an act of an obligor, or the result of a failure to act, that is made or effected after the right of the obligee arose and that causes or increases the obligor’s insolvency. LSA-C.C. art. 2036. An obligee may not annul a contract made by the obligor in the regular course of business. LSA-C.C. art. 2040.
In accordance with LSA-C.C. art. 2036, in order for an obligee to annul an act of the obligor, he must show (1) an act (or failure to act) of the obligor that causes or increases the obligor’s insolvency; and (2) the act must occur after the obligee’s rights arose. Parish Nat. Bank v. Wilks, 2004-1439 (La.App. 1st Cir.8/3/05), 923 So.2d 8. Additionally, the jurisprudence requires that the obligee must prove prejudice, injury or damage to the obligee as a result of the.act. Id.; see also, First Federal Savings & Loan Assoc. of Lake Charles v. Jones, 620 So.2d 408 (La.App. 3d Cir.), writ denied, 629 So.2d 347 (La.1993). The test for determining prejudice or injury is factual, based on the value of the property and the ranking of the indebtedness. Jones, supra; Central Business Forms, Inc. v. N-Sure Systems, Inc., 540 So.2d 1029 (La.App. 2d Cir.1989).
In the instant case, the trial court relied heavily on the testimony of DeWitt and the documents he provided to the court.[3] De- *918 Witt testified that Rolling Hills Farms owed Rollins between $1.7 and $1.8 million. In 2009, the property owned by Rolling Hills Farms was tacitly transferred to Rollins in consideration for a portion of the debt owed. Rollins, in turn, elected to transfer the property, as well as the remaining debt, to Louisiana Leasing. In dismissing Dortch’s claims, the trial court noted that “the 2006 tax return showed a liability of over $1,700,000, whereas the sale of [the horse], which precipitated this dispute^] did not occur until 2007.”
We agree. It is clear from the testimony presented at trial that Rolling Hills Farms was operating with a severe deficit in 2006, as its assets were significantly less than its liabilities. DeWitt unequivocally testified that Rolling Hills Farms was insolvent before the property was transferred. Rollins and DeWitt testified that Rollins had sold his farm and used some of the proceeds to pay debt owed by Rolling Hills Farms. The documents introduced into evidence showed that by the end of 2008, Rolling Hills Farms was indebted to its shareholders (Rollins and his wife) for | ^approximately $1.8 million. After reviewing the documents and testimony, it is clear that Rolling Hills Farms was insolvent long before Rollins transferred the property to Louisiana Leasing. Therefore, we find that the trial court did not err in concluding that Dortch failed to prove that the transfer of the property from Rolling Hills Farms to Louisiana Leasing caused or increased the insolvency of Rolling Hills Farms.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s judgment dismissing the plaintiffs revocatory action. Costs of the appeal are assessed to the plaintiff, James H. Dortch.
AFFIRMED.

. Although Dortch did not have any ownership interest in Rolling Hills Farms, he once had an ownership interest in another company, Louisiana Leasing, L.L.C., which was also owned by Rollins and his wife. However, Dortch sold his interest in Louisiana Leasing to Rollins in 2007.

. The quitclaim deed was filed on June 10, 2009.

. In its reasons for judgment, the trial court noted that it had ordered the defendants to *918 produce DeWitt’s "working papers” to support the information provided on the tax returns of Rolling Hills Farms. The defendants submitted balance sheets and journal entries to provide the court with better insight into figures and information listed on the returns.